McWILLIAMS, Circuit Judge.
 

 This appeal is from a district court judgment which dismissed as moot several related appeals from orders of a bankruptcy court.
 
 [1]
 
 The controlling issue is whether the district court erred in holding that the debt- or’s principal asset was sold to a “good faith purchaser,” which, in turn, resulted in a finding that Fed.R.Bankr.P. 805 mooted the appeals from the bankruptcy court orders. We do not believe that the district court committed error and accordingly affirm.
 

 I. Background
 

 In 1973, the appellee Leo R. Frey (Frey), the appellant Andrew H. Tompkins (Tompkins), and two others not party to this appeal executed an agreement creating the debtor, an Oklahoma limited partnership known as Bel Air Associates, Ltd. The agreement indicates that the partners created the debtor to acquire and operate an apartment complex
 
 [2]
 
 owned by the appellee Leroy Properties and Development Corporation (Leroy). Additionally, the agreement establishes that Frey is the sole general partner
 
 [3]
 
 of the debtor and that it was agreed by the partners that the apartment complex should be managed by the appellee PM & M Company (PM & M), a wholly owned subsidiary of Leroy. Finally, the agreement states that the limited partners had notice that Frey controlled Leroy and, through Leroy, PM & M.
 

 As contemplated by the partners, the debtor purchased the apartment complex from Leroy. Pursuant to the sale agreement, the debtor assumed the first mortgage on the apartment complex, paid Leroy $50,000 cash, and gave Leroy a note secured by a second mortgage on the apartment complex in the amount of $300,000. Concurrently, the debtor retained PM & M as manager.
 

 For approximately the next seven years, the debtor operated the apartment complex. Throughout that entire period, the debtor allegedly never earned a profit and was forced to borrow from PM & M to make up for the shortfall in revenues.
 
 [4]
 
 Be that as it may, in 1980 Frey decided to seek reorganization for the debtor under Chapter 11 of the bankruptcy code.
 
 [5]
 

 Early in 1980, Frey filed a petition for reorganization on behalf of the debtor.
 
 *304
 
 This petition listed the apartment complex as the debtor’s principal asset and the holder of the first mortgage on the apartment complex, Leroy, and PM & M as the debt- or’s principal creditors.
 

 Subsequently, Frey
 
 [6]
 
 submitted a plan of reorganization for the debtor. Frey’s plan, in essence, proposed that the apartment complex be auctioned off to the highest bidder and that the proceeds of the sale be used to pay the debtor’s creditors. The most salient feature of the plan, however, was the $3,321,000 “upset bid” of Leroy, which was composed of three elements: (1) assumption of the first mortgage on the apartment complex; (2) “bidding in” of Leroy’s and PM & M’s claims against the debtor; and (3) payment of $35,000 in administrative expenses which the debtor had incurred.
 

 Over the next several months the bankruptcy court allowed the claims of Leroy and PM & M and confirmed the plan submitted by Frey. Tompkins objected to these actions and took numerous appeals to the district court from orders of the bankruptcy court relating to these matters. Additionally, Tompkins asked the bankruptcy court to stay implementation of the plan.
 

 In March of 1980, the bankruptcy court granted a stay conditioned upon the posting of a $500,000 supersedeas bond. Believing that no bond should be required, Tompkins appealed to the district court, which granted him partial relief by reducing the required bond to $200,000. Nonetheless, Tompkins did not post bond by the required date. As a result, the plan was implemented. After the bankruptcy court determined that Leroy’s bid was the highest, the apartment complex was sold to Leroy.
 

 Shortly thereafter, Frey
 
 [7]
 
 asked the district court to dismiss all of the pending appeals from the orders of the bankruptcy court. Frey argued that the appeals were mooted by Fed.R.Bankr.P. 805 because Tompkins had failed to stay the sale of the apartment complex. Tompkins, in turn, contended that Leroy was not a “good faith purchaser” and that Fed.R.Bankr.P. 805 was therefore inapposite. Since the bankruptcy court had never explicitly held that Leroy was a “good faith purchaser,” the district court remanded the case to the bankruptcy court for a determination on the question. On remand, the bankruptcy court ruled that Leroy was a “good faith purchaser.”
 
 [8]
 
 The district court adopted this determination and, accordingly, dismissed the pending appeals.
 

 II. Discussion
 

 1. General Principles
 

 Fed.R.Bankr.P. 805 provides that a court-approved sale of property of a debt- or to a “good faith purchaser” cannot be set aside.
 
 [9]
 
 That being the case, a party appealing from an order which authorizes the sale of property of a debtor should obtain a stay of the order. Otherwise the property may be sold to a “good faith purchaser,” removing the property from the jurisdiction of the courts and rendering moot the appeal
 
 *305
 
 from the order authorizing the sale.
 
 [10]
 

 See, e.g., Bleaufontaine, Inc. v. Roland Int’l.,
 
 634 F.2d 1383 (5th Cir.1981);
 
 Schupak v. Dutch Inn of Orlando, Ltd.,
 
 614 F.2d 504 (5th Cir.1980).
 

 
 *304
 
 Unless an order approving a sale of property or issuance of a certificate of indebtedness is stayed pending appeal, the sale to a good faith purchaser or the issuance of a certificate to a good faith holder shall not be affected by the reversal or modification of such order on appeal, whether or not the purchaser or holder knows of the pendency of the appeal.
 

 
 *305
 
 By its own terms, Fed.R.Bankr.P. 805 applies only where the buyer is a “good faith purchaser.” Neither the rule nor the committee notes attached thereto define a “good faith purchaser” however. As a result, the courts applying Fed.R.Bankr.P. 805 have turned to the traditional equitable definition of a “good faith purchaser.”
 
 See, e.g., Greylock Glen Corp. v. Community Sav. Bank,
 
 656 F.2d 1, 4 (1st Cir.1981);
 
 In re Rock Indus. Machinery Corp.,
 
 572 F.2d 1195,1197 (7th Cir.1978). These courts hold that a “good faith purchaser” is one who buys in “good faith”
 
 [11]
 
 and for “value.”
 
 [12]
 

 See, e.g., Greylock Glen Corp. v. Community Sav. Bank,
 
 656 F.2d at 4;
 
 In re Rock Indus. Machinery Corp.,
 
 572 F.2d at 1197. We adopt this standard for purposes of this appeal.
 

 2. Tompkins’ Arguments
 

 Tompkins asserts three distinct grounds for reversing the district court’s finding that Leroy was a “good faith purchaser." The first two grounds relate to both elements of the definition of a “good faith purchaser;” the last, only to the requirement that the buyer act in “good faith.”
 

 Tompkins first contends that Leroy used its claim and that of PM & M as an “offset” in the bankruptcy sale knowing that the claims were fraudulent. In this regard, the bankruptcy court found that the debtor was indebted to Leroy on the $300,-000 secured note which constituted a portion of the purchase price of the apartment complex and was indebted to PM & M on notes representing loans extended by PM & M to enable the debtor to continue operating the apartment complex. The bankruptcy court’s finding was not clearly erroneous and is therefore controlling here.
 
 [13]
 
 Accordingly, Tompkins’ first ground for reversal fails.
 

 Tompkins next asserts that Leroy and Frey conspired to mislead the bankruptcy court into believing that Leroy’s bid for the apartment complex was the highest. It is undisputed that there was another bid which had a face value substantially higher than the value of Leroy’s bid. That bid, however, was made up in part of a wraparound mortgage, which deferred payment of principal for five years. In terms of present value, then, it is possible that Leroy’s bid was the better of the two—which is what the bankruptcy court concluded. Once again, the finding of the bankruptcy court is controlling because not clearly erroneous. As a result, Tompkins’ second ground for reversal fails.
 

 Tompkins’ final argument is that Frey being a fiduciary
 
 [14]
 
 of the debtor was
 
 *306
 
 barred from purchasing the apartment complex for himself and that Leroy was subject to a similar restraint because it was controlled by Frey. Even assuming that Leroy could be treated as the alter ego of Frey, we still would not accept this argument. By ratifying the purchase of the apartment complex from Leroy, Tompkins consented to Leroy becoming a creditor of the debt- or.
 
 [15]
 
 Under these circumstances, Tompkins is foreclosed from arguing that Leroy cannot exercise the customary prerogatives of a secured creditor, including the right to bid for the security at a bankruptcy sale.
 
 [16]
 
 For that reason, Tompkins’ third ground for reversal fails.
 
 [17]
 

 III. Conclusion
 

 In sum, there are no grounds for holding that Leroy did not act in “good faith” during the course of the bankruptcy sale or that the consideration paid by Leroy was inadequate or unreasonable. Accordingly, we must uphold the district court’s conclusion that Leroy was a “good faith purchaser.”
 
 [18]
 

 Judgment affirmed.
 

 [1]
 

 . The appeals from the bankruptcy court orders were filed with the district court pursuant to 28 U.S.C. § 1334 (West Supp.1983).
 

 [2]
 

 . The apartment complex is known as the Bel Air Apartments.
 

 [3]
 

 . In this capacity, Frey had “full” and “exclusive” authority to direct the business of the partnership.
 

 [4]
 

 . The partnership agreement specifically authorized Frey to borrow as needed from his affiliates or others on behalf of the debtor.
 

 [5]
 

 . Frey’s authority to seek unilaterally to reorganize the debtor is discussed in
 
 In re Bel Air Associates, Ltd,
 
 4 B.R. 168 (Bkrtcy.W.D.Okl.1980).
 

 [6]
 

 . Frey submitted the plan in the name of the debtor.
 

 [7]
 

 . Frey again acted on behalf of the debtor.
 

 [8]
 

 . Tompkins claims that the hearing conducted on remand did not comply with due process requirements. Specifically, Tompkins argues that the district court erred by refusing to consider evidence which allegedly indicated that Leroy’s bid was not the highest. Earlier, however, the bankruptcy court had conducted a full evidentiary hearing to determine the relative merits of the various bids, at which time it concluded that Leroy’s bid was the highest. Thus, it appears that Tompkins was afforded an opportunity to voice his opinions at a meaningful time. Therefore, there was no denial of due process. See
 
 Bleaufontaine, Inc. v. Roland Int’l,
 
 634 F.2d 1383, 1388 (5th Cir.1981).
 

 [9]
 

 .Fed.R.Bankr.P. 805 provides, in pertinent part, as follows:
 

 [10]
 

 . Our discussion above is phrased in terms of an appeal from an order approving the sale of property of the debtor, but the mootness principle derived from Fed.R.Bankr.P. 805 is actually much broader. It extends to any appeal for which effective relief is precluded by the sale of the debtor’s property.
 
 See, e.g., Trone v. Roberts Farms, Inc.,
 
 652 F.2d 793 (9th Cir.1981). In this case, the only effective relief for any of Tompkins’ appeals would be reversal of the sale of the apartment complex—a remedy which we hold is not available. Therefore, we affirm the district court’s decision to dismiss all of the appeals filed by Tompkins.
 

 [11]
 

 . The misconduct which would destroy a buyer’s “good faith purchaser” status at a judicial sale ordinarily “involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.”
 
 In re Rock Indus. Machinery Corp.,
 
 572 F.2d at 1198.
 

 [12]
 

 . In the context of bankruptcy proceedings, a purchaser is deemed to have paid “value” if he paid at least 75% of the appraised value of the assets.
 
 See, e.g., Greylock Glen Corp. v. Community Sav. Bank,
 
 656 F.2d at 4;
 
 In re Rock Indus. Machinery Corp.,
 
 572 F.2d at 1197 n. 1. Here, however, there was no appraisal.
 

 [13]
 

 .
 
 See Bleaufontaine, Inc. v. Roland Int’l.,
 
 634 F.2d at 1389 (the “factual findings of a bankruptcy court must be accepted and affirmed unless the appellate court finds them clearly erroneous”).
 

 [14]
 

 .
 
 See
 
 Okla.Stat.Ann. tit. 54, § 150 (West 1969).
 

 [15]
 

 . As indicated, the agreement which resulted in the creation of the debtor stated that the purpose of the debtor was to acquire the apartment complex owned by Leroy. The agreement, moreover, set forth the terms of the transaction. Thus, Tompkins not only ratified the purchase of the apartment complex but also explicitly consented to Leroy becoming a creditor of the debtor.
 

 [16]
 

 .
 
 Cf. Bleaufontaine, Inc. v. Roland Int’l,
 
 634 F.2d 1383 (5th Cir.1981) (a secured creditor who purchases the security at a bankruptcy sale can be a “good faith purchaser”).
 

 [17]
 

 . If not for the fact that Tompkins knowingly approved the purchase of the apartment complex from Leroy in the first instance, the result in this case might be different. See,
 
 e.g., Donovan & Schuenke v. Sampsell,
 
 226 F.2d 804 (9th Cir.),
 
 cert. denied sub nom., Freedman v. Donovan & Schuenke,
 
 350 U.S. 895, 76 S.Ct. 152, 100 L.Ed. 787 (1955).
 

 [18]
 

 . Because we hold that Frey did not act improperly during the course of the bankruptcy sale, we also refuse to reverse on the ground that there was a breach of fiduciary duty.