### In re PISCES LEASING CORP., Debtor.

### No. 86 C 3172.

United States District Court, E.D. New York.

Nov. 5, 1986.

Fensterheim & Fensterheim (Asher Fensterheim, of counsel), White Plains, N.Y., for appellant J.L.B. Equities, Inc.

Labozzetta & Hass (Robert Howard, of counsel), New York City, for appellee Barco Auto Leasing Corp.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

J.L.B. Equities, Inc. ("JLB"), a creditor of the bankrupt Pisces Leasing Corp. ("Pisces"), appeals from an order of the bankruptcy court approving a settlement authorizing the bankruptcy trustee to sell 87 vehicles to appellee, Barco Auto Leasing Corp. ("Barco"), for, among other things, a discharge of Barco's alleged secured claim. Barco now moves to dismiss the appeal as moot because JLB failed to obtain a stay of the order pending appeal.

On June 2, 1986, Pisces filed a voluntary Chapter 11 petition. On June 6, 1986, Barco, asserting a secured claim, moved to modify the automatic stay imposed by the Bankruptcy Code, see 11 U.S.C. § 362 (1982), so as to obtain possession of 87 vehicles that Barco had leased to Pisces and Pisces had subleased to individual end-users. Thereafter Barco and the trustee applied to the bankruptcy court to approve a settlement providing for, among other things, conveyance of the vehicles to Barco by private sale.

The settlement, in pertinent part, provided for: (i) allowance of Barco's claim, the amount of which was disputed, to the extent of $2.1 million; (ii) a private sale to Barco for $1.4 million of 87 vehicles, the appraised value of which Barco and the trustee estimated at $1,232,690, payment to be as a set-off against Barco's claim, which would be deemed secured in that amount, with the balance deemed a general unsecured claim; (iii) rejection by the trustee of the subleases with the end-users; (iv) Barco's undertaking to relet vehicles to specifically identified end-users on terms identical to those in the rejected leases; (v) Barco's waiver of any potential administrative expenses claim; (vi) Barco's undertaking to pay up to $10,000 for the reasonable and necessary costs and expenses as fixed by the court for preserving and disposing of the vehicles; and (vii) Barco's payment of $35,000 to the bankrupt estate.

The bankruptcy court held a hearing on approval of the settlement and its contemplated private sale, with notice that included solicitation of any higher, better offers given to creditors and other parties in interest. JLB objected to the settlement, contending that Barco's claim was unsecured because Barco had not perfected its security interest properly. The trustee testified that he believed the claim more likely than not was secured, and that the settlement was a reasonable way to avoid exposure to an unsuccessful litigation of the merits. See Transcript of August 19, 1986 Hearing, at 26–37.

The bankruptcy judge then entered an order approving the settlement. This appeal followed. JLB did not seek a stay of the order, and none was entered. After approval of the settlement, the trustee conveyed the vehicles to Barco, and Barco began to relet them to end-users.

Barco contends that this appeal should be dismissed because section 363(m) of the Bankruptcy Code renders it moot. That section provides, in pertinent part, as follows:

The reversal or modification on appeal of an authorization ... of a sale ... of

property does not affect the validity of a sale ... under such authorization to an entity that purchased ... such property *in good faith,* whether or not such entity knew of the pendency of the appeal, *unless such authorization and such sale ... were stayed pending appeal.*

11 U.S.C. § 363(m) (1982) (emphasis added). The stay requirement of this section, as well as of former Bankruptcy Rule 805, which contains similar language, " 'is in furtherance of the policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which [innocent] third parties rely.' " *In re Abbotts Dairies of Pennsylvania, Inc.,* 788 F.2d 143, 147 (3d Cir.1986) (quoting 14 *Collier on Bankruptcy* ¶ 11–62.03 at 11–62–11 (14th ed. 1976)). "Finality is important because it minimizes the chance that purchasers will be dragged into endless rounds of litigation to determine who has what rights in the property. Without the degree of finality provided by the stay requirement, purchasers are likely to demand a steep discount for investing in the property." *In re Sax,* 796 F.2d 994, 998 (7th Cir.1986).

It is in the interest of the creditors that the trustee have the power to make, with court approval, sales of the kind in issue here and to assure a good faith purchaser that the sale is final unless stayed. *See id.* at 997. Thus generally the courts have held, under both section 363(m) and former Rule 805, that failure to obtain a stay moots any appeal if, pending appeal, the sale is made to a good faith purchaser. *See, e.g., In re Andy Frain Services, Inc.,* 798 F.2d 1113 (7th Cir.1986); *In re Abbotts Dairies of Pennsylvania, Inc., supra; In re Bel Air Associates, Ltd.,* 706 F.2d 301 (10th Cir.1983); *Greylock Glen Corp. v. Community Savings Bank,* 656 F.2d 1 (1st Cir.1981); *In re Bleaufontaine, Inc.,* 634 F.2d 1383 (5th Cir.1981).

JLB contends that Barco is not a purchaser "in good faith" because it is an unsecured creditor having never properly perfected its security interest.

The Bankruptcy Code does not define "good faith," *see* 2 *Collier on Bankruptcy* ¶ 363.13 at 363–40 (15th ed. 1986), and so courts interpreting the phrase have looked for guidance to traditional equitable principles and have held that a "good faith purchaser" is one who buys in "good faith" and "for value." *See, e.g., In re Bel Air Associates, Ltd., supra,* 706 F.2d at 305; *Greylock Glen Corp., supra,* 656 F.2d at 4.

The requirement that a purchaser act in good faith "speaks to the integrity of his conduct in the course of the sale proceedings." *In re Rock Industries Machinery Corp.,* 572 F.2d 1195, 1198 (7th Cir.1978). Relevant misconduct ordinarily would involve "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *Id.* JLB does not urge that Barco failed to act in "good faith" in this sense. Rather, the argument is that Barco failed to pay "value."

■ In a bankruptcy proceeding, a purchaser pays "value" if it pays at least seventy-five percent of the appraised value of the sold assets. *See, e.g., Greylock Glen Corp., supra,* 656 F.2d at 4; *In re Bel Air Associates, Ltd., supra,* 706 F.2d at 305 n. 12. A creditor that exchanges its secured claim for assets of the bankrupt plainly is paying "value" for those assets in the ordinary sense. *See In re Youngstown Steel Tank Co.,* 27 B.R. 596, 599 (W.D.Pa. 1983) ("satisfaction of indebtedness is a purchase for value" under § 363(m)). Where that secured claim is contested, there is no reason why it should not constitute value unless the legal support for the claim as secured is so lacking as to approach frivolity. The strength of the legal position is simply a factor in assessing the adequacy of the consideration.

■ Here, Barco's assertion of a perfected security interest plainly was not frivolous and otherwise constituted "good faith." Indeed, the trustee found Barco's position sufficiently meritorious to justify a settlement. JLB was, of course, free to dispute before the bankruptcy court the

**674**

reasonableness of that settlement and to continue that dispute in this court on obtaining a stay. Absent such a stay, however, the only question is whether the consideration is adequate given the appraised value of the property sold. *See, e.g., In re Abbotts Dairies of Pennsylvania, Inc., supra; In re Greylock Glen Corp., supra; cf. In re Bel Air Associates, Ltd., supra* (court considered whether creditor's bid-in claim was fraudulent).

Here, Barco had asserted that its secured claim was for $2,756,413, and the bankrupt's schedules showed some $2.3 million owing. The settlement allowed the claim in the amount of $2.1 million and treated only $1.4 million as secured. Discharge of that amount plus the other consideration agreed to by Barco, even factoring in the possibility that its claim might have proven to be unsecured, constitutes sufficient value relative to the undisputed appraised value of the vehicles to merit a finding that Barco was a good faith purchaser within the meaning of section 363(m).

There is no reason to exempt from the stay requirement the dispute as to secured status of the claim. Every time a bankruptcy court authorizes a sale of assets there is a potential controversy as to the value given or received. Excusing the failure to obtain a stay merely on a showing that there is some legal uncertainty as to the secured status of a purchasing creditor ill-serves the policy of section 363(m). As the panel in *In re Sax, supra,* 796 F.2d at 998, noted: "The courts should follow statutory provisions precisely; to look for exceptions would increase litigation, which would seriously undermine the finality and certainty imposed by section 363(m)."

Barco's motion to dismiss the appeal as moot is granted. So ordered.