**In re SASSON JEANS, INC., d/b/a Sasson Industries and Sasson, Debtor.**

**No. M–47.**

United States District Court,
S.D. New York.

Sept. 20, 1988.

Edward N. Meyer, Cole & Deitz, New York City, for trustee.

Malcolm S. McNeil, Los Angeles, Cal., and Judd Burstein, New York City, for Guez.

## OPINION AND ORDER

CONBOY, District Judge:

Paul Guez, founder of the bankrupt Sasson Jeans Inc. ("Sasson"), appeals from an order of the bankruptcy court approving the sale of certain assets of the debtor to Stanwich Partners, Inc. ("SPI"). Bert K. Bergenfield ("the Trustee"), as Trustee of Sasson, now moves to dismiss the appeal as moot because Guez failed to obtain a stay of the order approving the sale pending appeal.

## BACKGROUND

On October 10, 1986, Sasson filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Central District of California. By order, dated November 12, 1986, the case was transferred to the United States Bankruptcy Court for the Southern District of New York. On June 1, 1987, the Bankruptcy Court entered an order appointing an examiner and providing for the appointment of a Chapter 11 trustee in the event that Sasson did not comply with certain of the provisions of that order. After Sasson failed to comply with the June 1, 1987 order, the Bankruptcy Court appointed Bert K. Bergenfield as the Chapter 11 Trustee of Sasson on July 14, 1987.

On or about April 8, 1988, the Trustee entered into an agreement ("the Purchase Agreement") with SPI, whereby SPI agreed to purchase the Sasson Trademarks, trade names, and Sasson's right as licensor under certain trademark license agreements (collectively, the "Trademark Assets"), for $8,000,000.00. The next day, the Trustee submitted an application to the Bankruptcy Court for an order approving the proposed sale of the Trademark Assets to SPI. By Order to Show Cause, dated April 25, 1988, the Bankruptcy Court scheduled a hearing for May 18, 1988 at which all interested parties were invited to voice their objections to the sale and/or submit higher or better offers for the Trademark Assets.

At the hearing, the appellant, Paul Guez, and other parties asserted various objections to the sale. After the objections were heard, counsel for the Trustee inquired into the existence of higher or better bids. The only bid, for $8,500,000, came from appellant but it was dismissed by the Court as "frivolous" since appellant failed to exhibit

a cashier's or certified check drawn on the order of the Trustee for at least 25% of the bid.[1] At the conclusion of the hearing, the Court signed an order ("the Order") overruling all objections and approving the sale of the Trademark Assets to SPI.

On June 2, 1988, Appellant filed a Notice of Appeal from the Order with the Clerk of the Bankruptcy Court. On or about June 16, 1988, appellant filed his Designation of Record and Statement of Issues on Appeal. On July 7, 1988 the sale of the Trademark Assets was closed. On August 3, 1988, the Trustee filed a motion to dismiss the appeal as moot. Apparently, Guez made no efforts, after June 16, to ensure that the record was assembled and transmitted to this court, and the case was never docketed with the Clerk's Office. Consequently, the motion to dismiss was assigned to Part I.

The Court heard arguments on the motion to dismiss on August 16, 1988. At the conclusion of the arguments, the Court adjourned the hearing until August 23, at which time the parties represented that they would provide the Court with a transcript of the May, 18 Bankruptcy hearing. Because the Trustee argued, correctly, that the validity of a sale to a good faith purchaser pursuant § 363 of the Bankruptcy Code could not be affected by the reversal or modification of the order approving the sale, Counsel for appellant was instructed to demonstrate, at the August 23 hearing, that the basis of the appeal was the purchaser's alleged lack of good faith. Appellant's memorandum in opposition to the motion to dismiss and a supporting affidavit were filed with the Court on August 25. At the follow-up hearing on August 23, counsel for appellant expressed his concern that the hearing was "turning into a mini appeal itself" (Tr. at 7) rather than an inquiry into the narrower question of whether the appeal was moot. In response, the Court indicated that appellant had been given a week to expand on and explain his allegations with respect to the purchaser's good faith which, as a practical matter, would be the same arguments advanced on the merits of the appeal. Nonetheless, appellant was given 3 days to submit any additional papers in support of the appeal. On August 26, the Court received copies of appellant's supplemental affidavit and memorandum of law in opposition to the motion to dismiss.

## DISCUSSION

Pursuant to 11 U.S.C. § 363(b)(1), "[t]he trustee, after notice and a hearing, may sell, use, or lease, other than in the ordinary course of business, property of the estate." Section 363(m) further provides that the reversal or modification of a bankruptcy order approving such a sale "does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, *unless such authorization and such sale or lease were stayed pending appeal.*" (emphasis added). Because Guez did not obtain a stay of the sale, movant asserts that the Court is powerless to grant any effective relief.

In accordance with the provisions of § 363, numerous cases have held that a would-be-appellant's failure to obtain a stay of a sale *to a good faith purchaser* renders an appeal from the bankruptcy order authorizing and confirming the sale moot. *See, e.g., Matter of Andy Frain Services, Inc.,* 798 F.2d 1113 (7th Cir.1986); *In re Abbotts Dairies of Pennsylvania, Inc.,* 788 F.2d 143 (3d Cir.1986); *In re Bleaufontaine, Inc.,* 634 F.2d 1383 (5th Cir.1981). But the failure of the appellant to obtain a stay does not completely foreclose appellate review. It simply narrows the permissible grounds for an appeal to whether the purchaser acted in good faith. *See Andy Frain,* 798 F.2d at 1125; *In re Sax,* 796 F.2d 994, 997 n. 4 (7th Cir.1986).

---

**1.** The Court-approved notice of the sale specified that any person wishing to bid had to exhibit a cashier's or certified check drawn on the order of the Trustee for at least 25% of his bid. Apart from his failure to back up the offer as required, the Bankruptcy Court noted that Guez was, and apparently still is, a debtor in his own personal Chapter 11 case and thus had improperly submitted the bid—an act outside the ordinary course of his business—without first seeking approval from the Bankruptcy Court.

In the context of a bankruptcy sale, "[t]he requirement that a purchaser act in good faith ... speaks to the integrity of his *conduct in the course of the sale proceedings.*" *In re Rock Industries Machinery Corp.*, 572 F.2d 1195, 1198 (7th Cir.1978) (emphasis added). "The misconduct which would destroy a buyers 'good faith purchaser' status at a judicial sale ordinarily involves fraud, collusion between the purchaser and the other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Bel Air Associates, Ltd.*, 706 F.2d 301, 305 (10th Cir.1983).

■ Because the bankruptcy court found the consideration for the sale to be fair and adequate and concluded that the purchaser acted in good faith, the Trustee argues that "no issue with respect to SPI's good faith exists." This is an overstatement. While the Bankruptcy Court's findings of fact are reviewed with extreme deference on appeal, *see In re Abbotts*, 788 F.2d at 147, they are not, as movant apparently argues, unreviewable:

> On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses.

Bankruptcy Rule 8013. The burden of demonstrating that a particular finding of fact was "clearly erroneous" is, however, a heavy one:

> " 'a finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced

that it would have decided the case differently. The reviewing court oversteps the bounds of its duty under Rule 52 if it undertakes to duplicate the role of the lower court. 'In applying the clearly erroneous standard to the findings of a district court sitting without a jury, appellate courts must have in mind that their function is not to decide factual issues *de novo.*' *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969). If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous.

*Anderson v. City of Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (discussing Fed.R.Civ.P. 52(a)). Thus we must decide whether the appeal falls within the narrow ground permitted under § 363 and, if so, whether the record before the bankruptcy court leaves us "with the definite and firm conviction that a mistake has been committed."

■ Guez's allegations of bad faith center around SPI's relationship to the debtor. Charles Bradley, the President of SPI, is also the Chief executive officer of Society Brands, Inc., which owns Men's Sportswear Inc. ("MSI"). MSI is a former licensee and a current creditor of Sasson, *see In re Men's Sportswear Inc.*, 834 F.2d 1134 (2d Cir.1987) which, according to Guez, renders SPI an ineligible bidder under § 363. Assuming, arguendo, that a licensee and/or creditor of the estate is an ineligible bidder as a matter of law, the Court is hard pressed to see how that fact alone calls SPI's good faith into question since the relationship between SPI and the debtor was fully disclosed to the Bankruptcy Court. *See* Amended Disclosure Statement, dated April 12, 1988 at 11, 53; Tr. of May 18, 1988 hearing at pp. 51–63. In any event, Guez has cited no authority to support his contention that SPI is an ineligible

bidder simply because MSI has had a long-standing contractual relationship with the debtor. *Cf. In re Transcontinental Energy Corp.*, 683 F.2d 326 (9th Cir.1982) (controlling owner of company which bought bankrupt's limited partnership interests in four oil-producing properties was not disqualified from acquiring any assets of bankrupt estate by reason of his status as operator and manager of one of the properties in question or his business relationship with bankrupt's president, where controlling owner had never been officer of bankrupt and bankruptcy court found that his business dealings with bankrupt's president were on arm's-length basis).

Based upon the unsupported assertion that MSI owes the Sasson estate "millions of dollars" [2] and the fact that MSI has two pending claims against the estate, one of which is based upon a judgment rendered in favor of MSI and affirmed on appeal, *see In re Men's Sportswear Inc., supra,* Guez further suggests that the Trustee will be less than diligent in pursuing claims against, and contesting claims by, MSI. Again, the Court is at a loss to see the nexus between the Trustee's alleged unwillingness to pursue claims against or defend claims by the purchaser and the purchaser's conduct in bidding for and obtaining the Trademark Assets. The simple fact is that Guez did not provide the Bankruptcy Court with a scintilla of evidence of *conduct* on the part of SPI to co-opt the Trustee with respect to claims by or against the estate or with respect to the sale itself. How the mere existence of claims by or against SPI tainted the sale proceedings—the proper focus of the "good faith" analysis under the caselaw—is never explained. The fact that a successful bidder is a creditor of the estate does not, standing alone, raise an inference that the sale is the product of fraud or collusion. *See, e.g., In re Youngstown Steel Tank Co.,* 27 B.R. 596 (W.D.Pa.1983) (secured

creditor was a good faith purchaser within the meaning of section 363).

The remainder of Guez's contentions are directed at innocent or irrelevant facts, or concern objections to aspects of the bankruptcy proceedings having nothing to do with the SPI's conduct in obtaining the Trademark Assets. For example, Guez makes much of the fact that SPI assigned the Trademark Assets to a third party soon after the sale closed. But Guez fails to explain why, as owner of the Trademark Assets, SPI was not free to dispose of the newly purchased assets as it saw fit. Guez also purports to find grounds for suspicion in an erroneously designated Certificate of Merger, from 1980, which indicated that the debtor had merged into a corporation called Sasson Licensing Corp. The suggestion is that the Trustee had no authority to sell the Trademark Assets as they were not property of the Sasson estate. In response, counsel for the Trustee produced an updated Certificate of Merger from the Secretary of State indicating that Sasson Licensing Corp. had in fact been merged into the debtor. In addition, as counsel for the Trustee noted at the hearing, this case, captioned *Sasson Jeans Inc.,* was filed by Mr. Guez who was the company's president "and if this company didn't exist for six years before the filing he knew it better than anybody else." (Tr. at 15). More importantly, if the debtor did not exist and the Trustee had no assets to sell, then the purchaser got nothing for its $8 million dollars—hardly a scenario suggestive of collusion or fraud. Finally, Guez's doubts about the wisdom of selling the Trademark Assets at all represent an attack upon the overall plan of reorganization, rather than SPI's conduct during the course of the sale proceedings, and are thus irrelevant to the narrow issue before the Court.

Giving Guez the benefit of the doubt, and assuming that one could reasonably infer, from the totality of the circumstances, that

---

**2.** Guez has submitted a portion of the minutes of a hearing before the bankruptcy Court at which the Trustee admitted that he failed to collect certain royalties from Men's Sportswear Inc. because he misunderstood the terms of the licensing agreement governing those royalties.

The Bankruptcy Court accepted the Trustee's assurances that he will pursue valid claims for unpaid royalties against MSI or any other licensee and I see no basis for questioning that determination.

SPI obtained the Trademark Assets through "fraud, collusion ... or an attempt to take grossly unfair advantage of other bidders," the Bankruptcy Court considered this argument and rejected it. Nothing in the record remotely supports the conclusion that the Bankruptcy Court's findings on the issue were clearly erroneous.

As a final matter, it would be prudent to address any contention that appellant did not have a full opportunity to present his arguments on the merits, given the manner in which this case came to be heard before the Court. Despite having had the opportunity to present all his arguments, and the evidence supporting them, in the context of the Trustee's motion to dismiss, Guez's position seems to be that if he establishes a colorable doubt with respect to SPI's good faith, he is entitled to a separate round of briefing "on the merits." This position is untenable for several reasons.

The second sentence of Rule 8001(a) states:

> Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the district court or bankruptcy appellate panel deems appropriate, which may include dismissal of the appeal.

(emphasis added). In addition to the notice of appeal, an appellant must, "[w]ithin 10 days of filing the notice of appeal, file with the clerk and serve on the appellee a designation of the items to be included in the record on appeal and a statement of the issues to be presented," Rule 8006, file with the clerk and deliver to the court reporter a written request for the transcript of any proceeding *immediately* after filing the designation if the record designated by the appellant includes such a transcript, *id.*, and "take any other action necessary to enable the clerk to assemble and transmit the record," *id.* Appeals have been dismissed for lack of diligence or outright defaults in following these rules. *See, e.g., In re Colombian Coffee Co., Inc.,* 71 B.R. 258 (Bankr.S.D.Fla.1987) (trustee's failure to timely file and serve designation of items to be included in record on appeal

and statement of issues to be presented warranted dismissal); *In re Soter,* 31 B.R. 986 (D.Vt.1983) (appeal from bankruptcy ruling dismissed where trustee did not timely serve court and debtor with contents of record on appeal and statements of issue, did not immediately order relevant transcript, ignored scheduling order, failed to file brief, seek continuance or oppose motion to dismiss); *West v. Falconer,* 17 B.R. 929 (S.D.Ill.1982) (appeal dismissed where appellants failed to file statements of issues or to request an extension of time in which to do so, failed to obtain timely transmittal of transcripts, failed to file brief or request extension of time in which to do so, and failed to make an entry of appearance or respond to motion to dismiss).

Although the text of Rule 8006 suggests that the designation of the transcript of the bankruptcy proceedings as part of the record is optional, an appellant *must* "include in the record such parts of the reporter's transcript as are necessary to give the district judge or appellate panel a fair and accurate account of what transpired before the bankruptcy judge with respect to the matters that are the basis of the appeal," 9 Collier on Bankruptcy para. 8006.04 at 8006–7 (15th ed. 1988); *Cf. Chernack v. Radlo,* 331 F.2d 170 (1st Cir.1964) (rule which required appellant to provide reviewing court with parts of record which appellant "deems" essential did not leave it to appellant to pick only favorable parts of record but imposed burden to provide all materials pertinent to issues raised); *Valley Stream Flooring Corp. v. Green Manor Construction Co.,* 336 F.2d 6 (1st Cir. 1964) (same), and "[i]f the appellant wishes to urge that a finding or conclusion is unsupported by the evidence, a transcript of all evidence relevant to such findings or conclusion must be included," 9 Colliers, *supra,* para. 8006.05 at 10. Thus, appellant was obligated to designate the transcript of the May 18 hearing, plus any evidence submitted on the issue of good faith, and to order the transcript from the court reporter *immediately* after such designation. Although, under Rule 8006, the actual preparation of the transcript and the

transmission of the record are the responsibilities of, respectively, the court reporter and the bankruptcy clerk, it is "the obligation of the appellant to take such action as is necessary for the clerk to assemble and transmit the record," *id.* 8007.04 at 7, and in this regard "[t]he parties should ensure that those parts of the record that they have designated are in the court record and can be assembled by the clerk for transmission to the district court or to the appellate panel." *Id.* 8006.06 at 12.[3] "In the case of failure to take steps to provide an adequate record, the court has sometimes refused to permit supplementation of the record and omit a consideration of issues not resolvable on the record transmitted." *Id.* 8001.07 at 19.

After filing his Designation of Record and Statement of Issues on Appeal, Guez apparently made no effort to secure a transcript or otherwise ensure that the record was properly assembled for transmission to the district court. In his designation of the record, Guez did not even include the minutes of the May 18, 1988 hearing before the bankruptcy judge. Consequently, when appellee's motion to dismiss was filed on August 3—2 months after Guez filed his Notice of Appeal—the matter had not been docketed in the Clerk's Office of this court and the motion was heard in Part I. Had the Trustee not moved to dismiss the appeal, it is not clear when, if ever, this matter would have been brought to a conclusion.

"The time limits set forth in the Rules of Bankruptcy Procedure are intended to provide for expeditious resolution of bankruptcy proceedings and should not be ignored." *Sanitation Recycling, Inc. v. Jay Peak Lodging Assoc.,* 428 F.Supp. 1022, 1023 (D.Vt.1977). Finality is particularly impor-tant when judicial sales pursuant to § 363 are at issue:

> The stay requirement of this section ... " 'is in furtherance of the policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which [innocent] third parties rely.' " *In re Abbotts Dairies of Pennsylvania, Inc.,* 788 F.2d 143, 147 (3d Cir.1986) (quoting 14 Collier on Bankruptcy para. 11–62.03 at 11–62–11 (14th ed. 1976)). "Finality is important because it minimizes the chances that purchasers will be dragged into endless rounds of litigation to determine who has what rights in the property. Without the degree of finality provided by the stay requirement, purchasers are likely to demand a steep discount for investing in the property." *In re Sax,* 796 F.2d 994, 998 (7th Cir.1986).

*In re Pisces Leasing Corp.,* 66 B.R. 671, 673 (E.D.N.Y.1986). *See In re Chung King, Inc.,* 753 F.2d 547, 549–50 (7th Cir. 1985). According to counsel for the Trustee, the doubts raised by the pendency of this appeal have already hampered efforts to market the Trademark Assets, since prospective licensees of the Sasson trademarks are understandably reluctant to enter into contracts that might be jeopardized by a ruling on the validity of the sale. Any further delay in deciding the appeal would only work to further impair the value of the sale to the purchaser.[4]

Because he was ordered out of the State for 90 days beginning on May 24, 1988, and was further ordered to attend a drug rehabilitation program in California, Guez contends that he was disabled from attending matters on appeal and thus should be granted an enlargement of time to further designate the appellate record and transmit

---

**3.** "Decisions under the Appellate and Bankruptcy Rules have made it clear that the burden of presenting the court of appeals with an adequate record is squarely on the appellant." *Id.* para. 8006.04 at 10.

**4.** Rule 9006(c)(1) permits the court to reduce the period of time within which actions under the Bankruptcy Rules are to be taken. Similarly, Rule 8009, which provides that the appel-lant's brief must be filed within 15 days after entry of the appeal on the docket, "permits the court by rule or order to *shorten* or extend the relevant time period." 9 Collier, *supra* 8009.03 at 4 (emphasis added). Collier suggests that the drafters of the Bankruptcy Rules provided flexibility in the timing and manner of hearing bankruptcy appeals because they recognized the necessity for quick action in certain cases. *Id.*

it to the court. A motion for an enlargement of time under the Bankruptcy Rules "made after the expiration of the specified period" will only be granted "where the failure to act was the result of excusable neglect." Rule 9006(b)(1). Courts have interpreted "excusable neglect" narrowly to mean those situations where "the failure to timely perform a duty was due to circumstances beyond the reasonable control of the person whose duty it was to perform." *In re South Atlantic Financial Corp.*, 767 F.2d 814, 817 (11th Cir.1985), *cert. denied*, 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311 (1986). In arguing that his expulsion from the State disabled him from advancing his appeal, Guez blithely ignores the fact that he was able to file a notice of appeal and to designate the record during his confinement in the drug rehabilitation program without any difficulty. If for some unstated reason he could not order the transcript or attend to other matters on appeal, he could have requested an enlargement of time pursuant to Rule 9006 well before the Trustee moved to dismiss. *See* 9 Collier, *supra* 9006.05 at 13 (court should be liberal in granting extension where request is made before period to act elapses).

In any event, Guez has not articulated any need to supplement the record before the Court. Guez has submitted evidence that allegedly supports his allegations of bad faith and, although it is not clear that all of the materials were before the Bankruptcy Court, *see In re Tiana Queen Motel, Inc.*, 34 B.R. 357 (S.D.N.Y.1983) (district court sitting as appellate court in bankruptcy should not receive into evidence materials which were not before the bankruptcy court), *aff'd in part and remanded in part*, 749 F.2d 146 (2d Cir. 1984), *cert. denied*, 471 U.S. 1138, 105 S.Ct. 2681, 86 L.Ed.2d 699 (1985). *But see In re Candor Diamond Corp.*, 26 B.R. 844 (Bankr.S.D.N.Y.1983) (documents not considered by bankruptcy court in reaching its decision may be included in record on appeal provided that appellate court is so informed), all such submissions have been considered. If there are any pertinent materials that have not already been submitted for the Court's review, Guez has not

identified them. Having concluded that Guez's arguments are without merit, the Court need not go through the empty process of reviewing them again.

For the foregoing reasons, the order of the Bankruptcy Court approving the sale of the Trademark Assets is affirmed.

SO ORDERED.