In re Judith A. ZINKE, a/k/a Judith Zinke, Judith Zorne, Debtor.

**HARBISON–FISCHER MANUFACTURING CO., Appellant,**

v.

**Judith A. ZINKE, a/k/a Judith Zinke, Judith Zorne, Appellee.**

Bankruptcy No. 887–71461–20.

No. 88 Civ. 0050.

United States District Court, E.D. New York.

March 3, 1989.

Abraham Backenroth, Nathan Schwed, Harvis & Zeichner, New York City, for debtor/appellee.

Andrew S. O'Connor, Milbank, Tweed, Hadley & McCloy, New York City, for appellant.

## MEMORANDUM AND ORDER

GLASSER, United States District Judge:

This is an appeal from a December 2, 1987 order of the United States Bankruptcy Court for the Eastern District of New York (Hall, J.), which, *inter alia*

(1) authorized the sale of the debtor's shares in Apartment No. 3A at 1010 Fifth Avenue, New York, New York to Ruth Lindenbaum ("the purchaser") for $2.3 million,

(2) ordered the debtor and debtor-in-possession to pay out of the sale proceeds all federal, state and city tax liens against the shares, and

(3) retained jurisdiction over the taxing authorities so that the bankruptcy court could determine claims by other parties as to the sale proceeds distributed to those taxing authorities.

Appellant asks this court to reverse the order and remand to the bankruptcy court on the ground that the bankruptcy failed to expressly find that the purchaser was acting in "good faith."

Appellant concedes, however, that it never obtained a stay pending appeal of the bankruptcy court's order. Under these circumstances, 11 U.S.C. § 363(m) normally insulates an authorized sale from appeal:

(m) The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property *in good faith*, whether or not such entity knew of the pendency of the appeal, *unless such authorization and such sale or lease were stayed pending appeal.*

(Emphasis added).

Relying on case law from outside this Circuit, appellant argues that, since § 363(m) by its terms only applies to "good faith" purchasers, the bankruptcy court had a duty to make an explicit finding of good faith before permitting the sale. *In re Abbotts Dairies of Pennsylvania, Inc.,* 788 F.2d 143 (3d Cir.1986). Therefore, appellant claims that this court must reverse the December 2, 1987 order and remand to the bankruptcy court for a finding on the issue of "good faith."

Appellant's reliance upon *Abbotts Dairies* is misplaced. While the opinion does impose an independent duty on bankruptcy courts in the Third Circuit to make an explicit "good faith" finding prior to authorizing a sale or lease of property in the debtor's estate, that duty has not been imposed by the Second Circuit or the United States Supreme Court.

This court declines to adopt an equivalent of the *Abbotts Dairies* rule in this appeal.[1] While the rule may have merit, the facts of this case do not warrant its adoption here. Appellant has never raised any factual issue regarding the purchaser's good faith: not in its written objections to

---

1. However, the court finds that appellant's argument that § 363(m) is inapplicable due to the lack of an express "good faith" determination by the bankruptcy court constitutes a "good faith argument for the extension ... of existing [Third Circuit] law" to the courts in the Second Circuit. *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985). Accordingly, the court will not impose sanctions on appellants pursuant to Fed.R.Civ.P. 11.

the sale filed with the bankruptcy court on November 13, 1987, not during the hearing held on November 17, 1987, and not in the papers filed in this appeal. In *Abbotts Dairies*, by way of comparison, the court found that the appeal from the disputed sale raised factual allegations which, if proven, would establish bad faith as a matter of law. *Id.*, 788 F.2d at 148. Moreover, the record in that case revealed that appellant had objected to the sale on bad faith grounds, both in its written submissions to the bankruptcy court and during the hearing. *Id.*[2]

In somewhat contradictory fashion, appellant also argues that the debtor and purchaser carry the burden of going forward with evidence on the issue of "good faith," and that, since they failed to meet this burden at the hearing, the sale should be undone.

Even if *Abbotts Dairies* were controlling law, nothing in that opinion establishes that the debtor and the purchaser carry the burden of production on the issue of good faith. In fact, by creating an *independent* duty on the part of the *bankruptcy court* to ascertain good faith, the *Abbotts Dairies* opinion indicates that *neither* party has this burden. *See* F. James & G. Hazard, *Civil Procedure* § 7.8 at 249 (2d ed. 1977) ("Under a system in which the tribunal itself ... had the responsibility for acquiring the materials for decision on its own initiative ... there would be no need to allocate the production burden to one of the parties."). *Cf. Greylock Glen Corp. v. Community Savings Bank*, 656 F.2d 1, 3 (1st Cir.1981) (burden was on appellant to supplement record examined by district court with evidence of purchaser's bad faith).

Appellant correctly points out that even if § 363(m) moots an appeal of the sale—which this court finds to be the case—nothing in § 363(m) prevents the court from reversing the interim distribution of the proceeds to the taxing authorities. As appellant notes, § 363(m) expressly contemplates the "reversal or modification on appeal" of the bankruptcy court's order authorizing a sale of the debtor's property, and that provision protects only "an entity that purchased or leased such property in good faith[.]"

While appellant has demonstrated that this court *can* reverse the interim distribution of proceeds from the sale, it has proffered no good reason why the court *should* do so. Appellant claims that since its claim to those proceeds is based on a "constructive trust" theory, distribution of the funds will dissipate the *res* and thus undermine appellant's claim.

Assuming—without deciding—that dissipation of the *res* presents a serious legal impediment to appellant's constructive trust claim, it is probably already too late to do anything about it. The sale has been consummated and, in the absence of a stay pending appeal, the court assumes that the proceeds already have been distributed to the taxing authorities, who may have commingled them with other funds.

Moreover, the court finds that no such legal impediment exists, since the taxing authorities took the proceeds subject to the bankruptcy court's continuing jurisdiction. By taking the proceeds on that condition, without appealing the bankruptcy court's order, the taxing authorities waived any defenses they may have to parties claiming an interest in the sale proceeds, to the extent that such defenses could not have been asserted but for the interim distribu-

**2.** Appellant simply misrepresents the holding in *In re Pisces Leasing Corp.*, 66 B.R. 671, 672 (E.D.N.Y.1986) (pursuant to § 363(m), court refused to consider purchaser's good faith where appellant failed to obtain stay pending appeal). None of the cases cited by appellant (except for *Abbotts Dairies*) lends any support to its contention that a remand is required where the bankruptcy court fails to make an express finding regarding the purchaser's good faith. While the

opinion in *In re Bel Air Associates, Ltd.*, 706 F.2d 301, 304 (10th Cir.1983) indicates that the district court in that case previously had remanded to the bankruptcy court for an explicit finding regarding "good faith," the Court of Appeals was not presented with, and made no ruling on, the question whether such a remand was necessary. Appellants cite pure *dicta* in *In re Sax*, 796 F.2d 994, 997 n. 4 (7th Cir.1986), since that appeal did not raise a good faith issue.

tion.[3]

. The court also rejects appellant's contentions that the bankruptcy court abused its discretion by shortening the period for providing notice of the sale to creditors, and by reducing the time to file an answer in the adversary proceeding.

Bankruptcy Rule 2002(a) permits the court to shorten the normal 20-day notice period for "a proposed use, sale, or lease of property of the estate" unless the court "for cause shortens the time" for giving notice. The bankruptcy court found that, in light of the softening Manhattan real estate market following the October 1987 stock market crash, an equally good offer for the property might not be forthcoming if the purchaser revoked her offer due to delay.

Bankruptcy Rule 7012 permits the bankruptcy court to prescribe a shortened time period for service of an answer in an adversary proceeding.

Aside from the fact that the bankruptcy court clearly had the authority to take these actions, appellants have not alleged that they suffered any resulting prejudice. *See In the Matter of Bleaufontaine, Inc.*, 634 F.2d 1383, 1387 n. 5 (5th Cir.1981) (arguably defective notice caused no due process violation where counsel for appellants/debtors attended many of the hearings on proposed property sale); *In re Vanguard Oil & Service Co.*, 88 B.R. 576, 580 (E.D.N.Y.1988) (no due process violation where no prejudice shown).

## CONCLUSION

Insofar as it seeks a reversal of the December 2, 1987 order and a remand on the issue of the purchaser's "good faith," or in any other way asks this court to undo the sale of the shares, the appeal is dismissed as moot, pursuant to 11 U.S.C. § 363(m). Insofar as it seeks to reverse

the bankruptcy court's order distributing the sale proceeds to the taxing authorities, the appeal is denied without prejudice. The court will entertain such a claim if, in the future, the bankruptcy court permits the taxing authorities to assert any defense which could not have been asserted but for the fact that the proceeds were distributed to the taxing authorities on an interim basis under the December 2, 1987 order.

The Appellee's motion for sanctions pursuant to Fed.R.Civ.P. 11 is denied.

SO ORDERED.

---

3. Moreover, the United States Department of the Treasury has waived such defenses *expressly*. The Department has represented to the court in its brief at p. 13 that "the taxing authorities are holding the funds *expressly without prejudice* to a subsequent determination of the rights of parties," and that "[i]n the event it is ultimately determined that other parties are entitled to the funds, such parties will certainly be able to recover the funds from the taxing authorities *and will not have been prejudiced by the interim distribution to the taxing authorities."* (Emphasis added).