**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 31 2003**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

In re:  INDEPENDENT GAS & OIL
PRODUCERS, INC.,

Debtor,

_____

ROBERT GUADANO, Substitute for
Appellant Mary Guadano,

Appellant,

v.

L. WIN HOLBROOK, Trustee,

Appellee.

No. 02-6036
(D.C. No. 00-CV-1619-M)
(W.D. Okla.)

**ORDER AND JUDGMENT** *

Before **EBEL** , **HENRY** , and **MURPHY,**  Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Appellant Mary Guadano, through her husband, Robert, appeals the district court's order dismissing her bankruptcy appeal as moot. [1] Mary sought to appeal a bankruptcy court order that voided certain pre-petition transfers of assets to her. During the pendency of her appeal, the trustee sold the assets to a creditor of the estate. Because Mary had not obtained a stay of the order authorizing the sale of the assets, the district court determined that the sale of the assets mooted her appeal. We conclude that the district court erred in dismissing the appeal as moot without first remanding the matter to the bankruptcy court to determine whether the sale of assets was made to a good faith purchaser.

Mary's husband, Robert, is the President and sole shareholder of the debtor, Independent Oil & Gas Producers, Inc. During all relevant times, Independent's principal assets consisted of producing and non-producing interests in two oil and gas wells and an over-riding royalty interest in a third well. In 1994, Independent retained the services of attorney George Lowrey to represent it in numerous matters and, in lieu of attorney fees, executed an agreement that gave Lowrey a

---

[1] In light of Mary's failing health, the district court permitted Robert to be substituted for Mary as the appellant in this action. To avoid confusion, we will refer to all the actions and arguments of the appellant as those of Mary.

partial interest in the wells. In 1995, Lowrey sued Independent, Robert and Mary in state court claiming they had failed to comply with the terms of the agreement.

In April 1998, shortly after the state court announced its intention to enter judgment in favor of Lowrey and against Independent for $645,000, Robert executed a series of documents on behalf of Independent that transferred Independent's remaining interests in the wells to Mary. These transfers were ostensibly made to effectuate a security agreement Independent had executed in September 1994 giving Mary a security interest in all monies she had or would loan to Independent.

On June 29, 1998, two months after the state court actually entered judgment for Lowrey, Independent filed for bankruptcy under Chapter 7. Both Mary and Lowrey filed proofs of claim against the bankruptcy estate. The bankruptcy trustee, Win Holbrook, brought an adversary proceeding against Mary seeking to set aside the pre-petition transfers to her from Independent on the grounds that they were both preferential and fraudulent, under 11 U.S.C. § 547 and § 548. Mary appeared pro se at the trial of the adversary proceeding, at the conclusion of which the bankruptcy court ruled that the transfers should be set aside as both preferential and fraudulent. The court further ordered that all the third-party payments for oil and gas produced by the wells that had been held in suspense be paid to the trustee. The bankruptcy court entered judgment on its

rulings on April 20, 2000, and Mary filed her notice of appeal to the district court the next day.

While Mary's appeal was pending in the district court, Holbrook reached an agreement with Lowrey to sell him all Independent's interests in the three wells for $36,838.18. On October 10, Holbrook filed a notice of intent to sell mineral interests in the bankruptcy court, to which Mary objected vociferously. Among other things, she noted that her appeal was still pending and argued that the bankruptcy court should not do anything with the assets in which she claimed an interest until the appeal was concluded.

On November 20, Mary filed with the district court a motion for immediate injunction to stop any further depletion of the assets of the bankruptcy estate. Among other things, she contended that the proposed agreement to sell the assets to Lowrey was made behind closed doors by a corrupt and manipulating trustee, that Holbrook and Lowrey had made a deal to cut up all the remaining assets of the estate between them, and that it was a "dirty trick" that would give away the assets that were stolen from her. The motion sought to have the bankruptcy court enjoined from taking any further action with respect to any of the assets of the estate until the appeal of the adversary proceeding was concluded.

By order of December 11, the district court denied the motion on the ground that Mary had not first sought a stay from the bankruptcy court. Mary then

promptly sought a stay from the bankruptcy court. The bankruptcy court denied her request for a stay.

On February 7, the bankruptcy court held a hearing on a variety of pending motions, including Holbrook's notice of intent to sell mineral interests at a private sale and Mary's request for permission to bid on the wells, to which Holbrook had objected. [2] Neither Mary nor Robert appeared at the hearing. On February 9, the bankruptcy court entered an order authorizing the sale of Independent's interest in the three wells to Lowrey and denying Mary's motion to bid on the wells for lack of prosecution. Mary did not separately appeal this order, but she did seek another stay from the district court, which was never ruled on.

On March 9, Holbrook filed the trustee's Report of Sale in the bankruptcy court, and on March 22, he filed a motion in district court seeking to dismiss Mary's pending appeal as moot. Holbrook argued that since the only relief Mary sought in her appeal was a return of the interests previously transferred to her by Independent, the subsequent sale of those interests mooted her appeal.

---

[2]   In his objection, Holbrook argued that anything Mary might pay for the wells would just go to pay the claim of Lowrey, who was the only remaining pre-petition creditor of the estate, unless Mary could bid more than Lowrey's $645,000 proof of claim. Because Mary could not bid more than Lowrey's proof of claim, Holbrook argued, and because Lowrey would rather have the interests in the wells than whatever money Mary might bid, the court should approve the private sale to Lowrey and not permit Mary to bid on the wells.

On April 9, Mary filed an objection to Holbrook's motion to dismiss. Among other things, she argued that Holbrook had promised her she would have an opportunity to bid on the wells herself, but she was later denied that right even though she offered more for the wells than did Lowrey. She also challenged the sale to Lowrey on the ground that Lowrey had testified in state court that the interests at issue were worth $1.3 million, but now he was allowed to purchase those same interests for only $36,838.18. She questioned how the bankruptcy court could approve a sale under these circumstances.

On April 16, Lowrey filed a motion to intervene in the district court for the limited purpose of filing a motion to dismiss the appeal. Lowrey noted that the bankruptcy court had disallowed and expunged Mary's proof of claim after finding that she had already been repaid all the money she had loaned to Independent. Lowrey argued that Mary's failure to appeal that order doomed her claim to the oil and gas interests at issue in the adversary proceeding, because her claim was based on the premise that the interests were transferred to her in consideration of the money she had loaned Independent.

Both Holbrook and Mary objected to Lowrey's motion to intervene and Mary also objected to Lowrey's motion to dismiss. Among other things, Mary claimed that the transfer of the estate's assets to Lowrey was accompanied by fraud. She noted that Lowrey had always claimed to have no money, and she

questioned where he obtained the money to purchase the assets from the estate. She surmised that Lowrey, Holbrook, and his law partner (who was the attorney for the trustee) made a deal whereby they would suck all the assets out of the estate, there being approximately $80,000 in third-party oil and gas payments in the estate in addition to the wells. She suggested that Holbrook, his attorney, and Lowrey agreed that Mary would be prevented from bidding on the wells even though her proposed bid was higher than the proposed sale price to Lowrey, and that Lowrey then borrowed the money from his father to purchase the oil and gas interests so everything would look above board. She further suggested that Holbrook and his attorney agreed with Lowrey not to submit any more claims against the estate for attorney fees, but that Holbrook reneged on this agreement and submitted another request for interim fees, to which Lowrey filed an objection. Mary said that she had repeatedly requested that Holbrook give her copies of all the documentation relating to the sale of assets to Lowrey, but that Holbrook had refused.

Two weeks later, Mary filed an amendment to her objection to Lowrey's motion to intervene based on a telephonic hearing on Holbrook's request for interim fees that had taken place in the bankruptcy court the previous week. Mary claimed that the hearing, a transcript of which she attached, showed that Lowrey had pretended to be at odds with Holbrook by filing an objection to his fee

application, but that Lowrey had then not appeared at the hearing to pursue his objection. She argued that the transcript also showed that Lowrey had not paid any money for the estate's oil and gas interests because he had used the estate's money to make the purchase. [3] Mary also argued that Holbrook had lied at the hearing when he professed not to have any recollection of the fact that Mary had attempted to submit a bid on the wells that was higher than the price Lowrey paid for them.

On January 2, 2002, the district court entered an order dismissing the appeal as moot based on the intervening sale of the assets to Lowrey. [4] The district court relied in part on this court's decision in *Tompkins v. Frey (In re Bel Air Associates, Ltd.)*, 706 F.2d 301 (10th Cir. 1983), where we held that

> a party appealing from an order which authorizes the sale of property of a debtor should obtain a stay of the order. Otherwise the property may be sold to a "good faith purchaser," removing the property from the jurisdiction of the courts and rendering moot the appeal from the order authorizing the sale.

---

[3]  This may be a reference to Holbrook's statement to the bankruptcy court that, along with the interests in the wells, Lowrey received all the third-party oil and gas payments that had been held in suspense, which amounted to "a substantial amount of money." D. Ct. R., Doc. 26, Ex. A, at 7.

[4]  The district court did not rule on either Lowrey's motion to intervene or his motion to dismiss the appeal.

*Id.* at 304-05; [5] *see also* 11 U.S.C. § 363(m) (providing that validity of sale to good faith purchaser cannot be disturbed on appeal unless order authorizing sale has been stayed). Although *In re Bel Air Associates* concerned an appeal from an order authorizing the sale of property, we recognized that the mootness principle set forth above is "much broader" and "extends to any appeal for which effective relief is precluded by the sale of the debtor's property." 706 F.2d at 305 n.10. Mary's appeal, which sought the return to her of assets that were subsequently sold by the trustee, may be such an appeal.

This bankruptcy mootness principle applies only where the buyer of the property is a good faith purchaser, however. In *In re Bel Air Associates*, we used the following standard for a good faith purchaser: one who buys 1) in "good faith," i.e., through a sale that does not involve "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders," and 2) for "value," i.e., by paying "at least 75% of the appraised value of the assets." 706 F.2d at 305 & nn.11-12 (quotation omitted). The district court acknowledged that the sale to someone who is not a good faith purchaser creates an exception to the mootness principle. But the court found that

---

[5] Our decision in *In re Bel Air Associates* involved the application of former Bankruptcy Rule 805, which no longer exists, but which has been codified in part at 11 U.S.C. § 363(m).

Mary did not "assert[] the applicability of any of the exceptions to the bankruptcy mootness rule." D. Ct. R., Doc. 45 at 3. In this, the district court erred.

Mary's filings with the district court clearly alleged that the sale of assets to Lowrey was accompanied by fraud, that the sale was the result of collusion between Lowrey and Holbrook, and that Mary was unjustly excluded from the opportunity to bid on the assets herself. Granted, Mary did not specifically allege that these facts created an exception to the mootness doctrine. But her status as a pro se litigant entitled her filings to a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Based on our review of the record, we conclude that Mary's pleadings raised a sufficient challenge to Lowrey's status as a good faith purchaser that the district court should have considered it in determining whether the appeal was moot.

Had the district court considered the question of whether Lowrey was a good faith purchaser, it would have seen that a remand to the bankruptcy court is necessary to resolve this issue. While bankruptcy courts often include in their orders authorizing sale a finding that the buyer is a good faith purchaser, the bankruptcy court here did not make this or any similar finding. Its order authorizing the sale of assets to Lowrey stated only:

> The trustee's notice of intent to sell requests that the court approve
> the private sale of certain assets of the estate to the sole creditor of
> the estate. Having heard and considered the testimony of the trustee
> with regard to the relief requested the Court hereby approves the

-10-

terms and manner of the sale, and denies the objection thereto filed by
Mary Guadano.

D. Ct. R., Doc. 16, Ex. A, at 2.

In the absence of a finding by the bankruptcy court that Lowrey was a good faith purchaser, the district court erred in dismissing the appeal as moot. We therefore REVERSE the decision of the district court dismissing the case as moot, and we REMAND the matter to the district court with directions to remand to the bankruptcy court for further proceedings consistent with this order and judgment. All outstanding motions are DENIED as moot.

Entered for the Court

Michael R. Murphy
Circuit Judge