**SULLIVAN CENTRAL PLAZA I LTD., and John R. Sullivan, Appellants,**

v.

**BANCBOSTON REAL ESTATE CAPITAL CORPORATION, Appellee.**

Civ. A. No. 3–89–1431–T.

United States District Court,
N.D. Texas,
Dallas Division.

Oct. 11, 1989.

T. Glover Roberts, Robert E. Goodman, Jr., Susan B. Hersh, Samuel M. Stricklin, Sheinfeld, Maley & Kay, and Sander L. Esserman and Kenneth F. Plifka, Stutzman & Bromberg, Dallas, Tex., for appellants.

J. Maxwell Tucker, Winstead McGuire Sechrest & Minick, Dallas, Tex., for appellee.

## ORDER DISMISSING BANKRUPTCY APPEAL

MALONEY, District Judge.

On June 21, 1989, Appellee filed its Motion to Dismiss Bankruptcy Appeal. Appellants filed their response and request for remand on July 10, 1989. Appellee filed its opposition to the request for remand on July 17, 1989.

This is an appeal from two orders of the Bankruptcy Court dated May 3, 1989, granting a preliminary injunction under 11 U.S.C. § 105 and May 16, 1989, vacating a temporary restraining order. Appellee moves the Court to dismiss this appeal because the Court can no longer grant effective relief to Appellant. The Court, having considered Appellee's motion and the Appellants' response thereto, is of the opinion that it can not grant any relief and therefore this appeal is moot.[1]

## BACKGROUND

On June 10, 1985, Appellant Sullivan Central Plaza I, Ltd., ("Debtor"), executed a promissory note in favor of Appellee BancBoston Real Estate Capital Corporation ("BancBoston"), on the face amount of $39,000,000. The note was secured by a 16-story office building known as the Metropolitan Financial Tower ("Tower"). Debtor failed to pay the interest installments and the Tower was posted for an August 2, 1988 foreclosure sale. On August 1, 1988, Debtor and BancBoston en-

---

1. Simultaneously with the entry of this order, the Court is entering a similar order in CA 3–89–1357–T, a related appeal by Appellants against Appellee concerning this same action.

tered an agreement to forebear foreclosure. The agreement subsequently fell through and the property was posted for foreclosure on September 6, 1988. Consequently, Debtor filed a petition for relief under Chapter 11 in the Bankruptcy Court on September 6, 1988, preventing the foreclosure.

On December 9, 1988, BancBoston filed its motion for termination of automatic stay and demand for adequate protection. After several extensive hearings in January and February, on February 27, 1989, the Bankruptcy Court concluded that the automatic stay arising under 11 U.S.C. § 362 should be terminated with respect to BancBoston's foreclosure of the Tower. The Bankruptcy Court's order was entered on the docket in March 3, 1989. On March 16, 1989, Appellants sought reconsideration which was denied on March 29, 1989.

On March 30, 1989, Appellants commenced as adversary proceeding, 389–3206, filing a complaint for emergency injunctive relief under 11 U.S.C. § 105. After an evidentiary hearing on April 3, 1989, the Bankruptcy Court entered a temporary restraining order on April 4, 1989. On May 3, 1989, the Bankruptcy Court entered an order modifying the injunction. On May 16, 1989, the Bankruptcy Court vacated the temporary restraining order.

Appellants filed a notice of appeal on May 18, 1989. After Appellants sought this appeal, the Tower was posted for a June 6, 1989, foreclosure. Appellants filed an emergency motion for stay pending appeal on May 25, 1989. That motion was denied by this Court on June 2, 1989. Appellants sought a writ of mandamus from the Fifth Circuit which was denied on June 5, 1989. The Tower was sold at foreclosure to Dallas Central Development Corporation, a corporation indirectly affiliated with BancBoston, on June 6, 1989.

### SUMMARY OF ARGUMENT

BancBoston contends that Appellants' appeal should be dismissed under the moot-

ness doctrine. Specifically, BancBoston argues that because the Tower was sold at foreclosure and Debtor has no right of redemption, there is no effective relief which this Court can grant Appellants, even if they prevail on the merits of this appeal.

Appellants respond that the appeal is not moot because the mootness doctrine does not apply and that BancBoston failed to use "good faith" in the foreclosure. Appellants argue that BancBoston failed to use good faith as a matter of law, or in the alternative, that the Court should remand this action to the Bankruptcy Court for a determination of whether good faith was used in the foreclosure of the Tower. Appellants raise two points in questioning whether good faith was used. First, on March 13, 1989, BancBoston assigned the deed of trust to Dallas Central Development Corporation, an affiliate, after the order terminating the stay was entered but prior to the foreclosure, and that it was Dallas Central which actually foreclosed on the property. Second, Dallas Central made a credit bid of $29.5 million for the Tower, which was substantially less than the $35 million value that the Bankruptcy Court determined the Tower was worth.[2]

### DISCUSSION

The general rule is well-settled that a debtor's failure to obtain a stay pending appeal renders an appeal moot if assets in which the creditor had in interest are sold in foreclosure. *See Matter of First Mortgage Atrium Building, Ltd.*, 92 B.R. 202 (E.D.Tex.1988) *See also In re Onouli-Kona Land Co.*, 846 F.2d 1170 (9th Cir. 1988) (mootness rule applies when applicant has failed to obtain a stay from an order that permits sale of debtor's assets); *Matter of Bleaufontaine, Inc.*, 634 F.2d 1383 (5th Cir.1981) (where no stay of sale order is obtained, appellate court cannot affect sale and appeal is dismissed as moot); *Official Committee of Senior Unsecured Creditors of First RepublicBank Corpo-*

---

2. On July 11, 1989, Appellants filed a motion to add Dallas Central Development Corporation as a party to this appeal. Without expressly ruling on that motion, but for purposes of this motion only, the Court will consider BancBoston and Dallas Central as one party.

*ration v. First RepublicBank Corporation,* 106 B.R. 938 (N.D.Tex.1989).

In *Matter of First Mortgage,* Judge Schell discussed in great detail the origins of the mootness doctrine. In bankruptcy, the mootness doctrine arises in both a statutory and non-statutory context. The statutory basis of the doctrine is found in 11 U.S.C. § 363(m), which provides in pertinent part:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

That section recognizes that a sale should not be undone once consummated, absent a lack of good faith on the part of the purchaser. However, § 363(m) does not apply to other foreclosure sales in bankruptcy proceedings, such as may occur when the bankruptcy court lifts the automatic stay, allowing the creditor to foreclose its lien. *Id.* at 204.

The non-statutory mootness doctrine was originally premised on the notion that an appellate court was unable to fashion relief to a debtor once a foreclosure sale had occurred. However, a second principle has furthered the rationale for the mootness doctrine, finality. This principle provides finality to orders of bankruptcy courts and protects good faith purchasers. *Id.* at 203.

The parameters of the non-statutory mootness rule have not been expressly examined by the Fifth Circuit in a bankruptcy context. However, Judge Schell found, in reviewing the law of the circuits which have addressed the mootness issue, that the Ninth Circuit recognizes a narrow exception for cases in which real property is sold to a creditor who is a party to the appeal. *See In re Onouli–Kona Land Co.,* 846 F.2d 1170. However, the Eleventh Circuit has rejected any exception, even where a creditor purchases property at fore-closure is a party to the appeal. *Markstein v. Massey Associates, Ltd.,* 763 F.2d 1325, 1327 (11th Cir.1985).

After careful consideration, Judge Schell held that in the absence of any Fifth Circuit authority he believed the Fifth Circuit would frame the issue as follows:

> If a debtor fails to obtain a Stay Pending Appeal and foreclosure occurs, an appellate court will not grant relief having the effect of reversing the foreclosure, unless the creditor who purchased the real property at foreclosure is a party to the appeal *and* statutory rights of redemption exist under applicable state law. (Emphasis added).

*Matter of First Mortgage,* at 207. Judge Schell continued by holding:

> Under such a rule, the case at bar is dismissed. Texas has no statutory right of redemption. Texas has an equity of redemption, but it perishes when foreclosure occurs pursuant to a valid Deed of Trust. *Rogers v. Fielder,* 392 S.W.2d 797, 798–99 (Tex.Civ.App.—Fort Worth 1965, writ ref'd n.r.e.). Such was the case in the proceedings below.

*Id.* at 207.

■ This Court concurs with Judge Schell's opinion has to how the Fifth Circuit would frame the issue and the holding reached by him. In the instant appeal, like that before Judge Schell, Appellants' equitable right of redemption perished. Therefore, the Court holds that it can afford Appellants no relief.

Appellants contend however, that the good faith requirement under § 363(m) is still required to be met under the non-statutory mootness doctrine. Judge Schell, while noting this issue and that the case law on this point is unclear, specifically declined to reach the issue. This Court, however, holds that the good faith requirement of § 363(m) does not apply in actions such as that before the Court where the sale of the property is undertaken after the lifting of the automatic stay under § 362, because Texas state law already provides that a non-judicial foreclosure must meet certain statutory requirements. Tex.Prop. Code Ann. § 51.002 (Vernon 1984).

■ However, the Court holds that even if the good faith requirement of § 363(m) should be imposed upon the foreclosure, Appellants have failed to raise any genuine issue that a lack of good faith existed in the sale of the Tower sufficient to require this Court to invalidate the sale. The type of conduct of a purchaser which would destroy its good faith status in § 363(m) involves fraud, collusion between the purchaser and other bidders of the trustee, or an attempt to take grossly unfair advantage of other bidders. *Matter of Bleaufontaine, Inc.*, 634 F.2d 1383, 1388. *See also In re Rock Industries Machinery Corp.*, 572 F.2d 1195 (7th Cir.1978) (requirement that purchaser act in good faith speaks to integrity of his conduct in course of sale proceeding); *Matter of Andy Frain Services, Inc.*, 798 F.2d 1113 (7th Cir.1986).

Alternatively, Appellants argue that the Court should remand this action to the bankruptcy court for a specific finding as to whether a lack of good faith was exhibited in the sale of the Tower. However, the Court finds that a remand is unnecessary as the facts surrounding the sale are undisputed. *In re Zinke*, 97 B.R. 155 (E.D.N.Y. 1989). *See also Greylock Glen Corp. v. Community Savings Bank*, 656 F.2d 1 (1st Cir.1981); *Matter of Bleaufontaine.*

■ Appellants' allegation that BancBoston's assignment of the Deed of Trust to Dallas Central for foreclosure without permission from the Bankruptcy Court evidences a lack of good faith, without more, is insufficient to show a lack of good faith. Appellants have not alleged fraud, collusion, or other irregularities in the sale of the Tower itself. The Court holds, as a matter of law, that the mere assignment of a right to foreclose on a property to an affiliated corporation is insufficient to raise an issue of whether a lack of good faith exists.

Appellants also contend that a lack of good faith was exhibited by Dallas Central's bid of $29.5 million on the Tower despite a finding by the Bankruptcy Court that the property was worth $34 million. The gravamen of this contention is that the bid price offered by Dallas Central was inadequate, thus the sale was not in good faith.

■ Traditionally, courts have held that fair and valuable consideration is given in a bankruptcy sale when the purchaser pays 75% of the appraised value of the assets. *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 149 (3rd Cir.1986). *See also Greylock Glen Corp.*, 656 F.2d 1 (a buyer is deemed to have purchased in good faith when he pays at least 75% of the appraised value); *Durrett v. Washington National Insurance Co.*, 621 F.2d 201 (5th Cir.1980).

Dallas Central's bid of $29.5 million was 84.80% of the price established by the bankruptcy court. Therefore, the Court holds that Dallas Central's bid does not evidence a lack of good faith in the sale of the Tower.

## CONCLUSION

The Court holds that there is no relief which it can afford Appellants and, therefore, the appeal should be dismissed.

It is therefore ORDERED that Appellee's motion to dismiss bankruptcy appeal is granted and that the appeal of the Bankruptcy Court's orders dated May 3 and May 16, 1989, is dismissed.