IN the Matter of SULLIVAN CENTRAL PLAZA I, LTD., Debtor.

SULLIVAN CENTRAL PLAZA I, LTD., and John R. Sullivan, Appellants,

v.

BANCBOSTON REAL ESTATE CAPITAL CORPORATION and Dallas Central Development Corporation, Appellees.

Nos. 89–7001, 89–7002 and 90–1391.

United States Court of Appeals, Fifth Circuit.

July 17, 1991.

Sander L. Esserman, Stutzman & Bromberg, Dallas, Tex., for Sullivan Cent. Plaza I, Ltd.

T. Glover Roberts, Robert E. Goodman, Jr., Sheinfeld, Maley & Kay, Dallas, Tex., for John R. Sullivan.

J. Maxwell Tucker, Winstead, McGuire, Sechrest & Minick, Dallas, Tex., for appellees.

Before GOLDBERG and HIGGINBOTHAM, Circuit Judges, and MAHON,[1] District Judge.

GOLDBERG, Circuit Judge:

An architect gazing upon the Metropolitan Financial Tower[2] in Dallas could doubtless explain the structural members that support this sixteen-story office tower. An engineer might be more interested in the maze of ducts and cables that carry the life-force of a modern edifice. As judges, however, our focus must be the morass of bankruptcy litigation that has enveloped this building for over two years.

The procedural posture of today's matter is complex. We have before us two separate appeals. In Nos. 89–7001 and 89–7002, we reconsider the issue we previously

---

**1.** District judge of the Northern District of Texas, sitting by designation.

**2.** Apparently, the tower's former name.

decided adversely to the debtor, Sullivan Central Plaza I, Ltd. (Sullivan Central), namely, whether its appeal of certain bankruptcy court orders was rendered moot by the sale of the Tower. In No. 90–1391, we consider for the first time Sullivan Central's appeal of a district court order affirming the bankruptcy court's involuntary conversion of Sullivan Central's Chapter 11 proceeding into a Chapter 7 proceeding.

Upon due consideration, we continue to believe that events have mooted Sullivan Central's first appeal, and we find that the conversion order was proper. Accordingly, we affirm the orders of the bankruptcy and district courts.

*Procedural Background*

The background of this litigation has been recounted in previous opinions,[3] but a summary here will serve as a reminder. In 1985, Sullivan Central executed a promissory note in favor of Appellee BancBoston Real Estate Capital Corporation, in the face amount of $39 million. This note was secured by an office building, the Metropolitan Financial Tower. Sullivan Central failed to pay the interest installments and BancBoston posted the Tower for a September 6, 1988 foreclosure sale.

On September 6, 1988, Sullivan Central filed its voluntary petition under Chapter 11, and BancBoston was automatically stayed from conducting the foreclosure sale. After extensive hearings, the bankruptcy court concluded on February 27, 1989 that Sullivan Central wholly lacked equity in the Tower, that Sullivan Central's amended plan for reorganization could not be confirmed, and thus, that no prospect for reorganization existed. Therefore, the bankruptcy court entered an order lifting the automatic stay arising under 11 U.S.C. § 362, thereby allowing BancBoston to post the Tower for foreclosure. Sullivan Central sought and was denied reconsideration of the stay order. Sullivan Central then

filed notice of appeal of the order lifting the automatic stay, and also requested that the order itself be stayed pending appeal (this would have left the automatic stay in effect pending appeal). The bankruptcy court denied this request.

Sullivan Central next sought emergency injunctive relief under 11 U.S.C. § 105, simultaneously filing a Second Amended and Restated Plan for Reorganization. The bankruptcy court found a substantial likelihood that this plan would be confirmable, and issued a temporary restraining order on April 4, 1989, enjoining a foreclosure scheduled for that day. After a subsequent hearing, the court modified the TRO by placing additional financial requirements on Sullivan Central. A month later, determining that Sullivan Central had failed to meet these conditions, the court vacated the TRO. BancBoston then posted the Tower for a June 6, 1989 foreclosure sale.

On May 18, 1989, Sullivan Central filed a notice of appeal from the orders modifying and vacating the TRO. On May 25, 1989, Sullivan Central filed with the bankruptcy court an emergency motion for a stay pending appeal, which was denied. Sullivan Central then presented an identical motion to the district court, which was also denied. Sullivan Central then sought a writ of mandamus from this court, which too was denied on June 5, 1989. The June 6, 1989 foreclosure occurred as scheduled, and Dallas Central Development Corporation, an affiliate of BancBoston, bought the Tower.

Following the foreclosure, BancBoston filed its Motion to Convert Case to Chapter 7. The bankruptcy court conducted a hearing on this motion, then continued the motion pending the district court's decision on the appeals of the bankruptcy court's orders regarding § 362 and § 105 relief. The district court subsequently dismissed both appeals as moot,[4] and Sullivan Central ap-

---

**3.** *See Sullivan Central Plaza I Ltd. v. BancBoston Real Estate Capital Corp.,* 106 B.R. 931 (N.D.Tex. 1989); *Sullivan Central Plaza I Ltd. v. BancBoston Real Estate Capital Corp.,* 106 B.R. 934 (N.D.Tex.1989); *In re Sullivan Central Plaza, I, Ltd.,* 914 F.2d 731 (5th Cir.1990).

**4.** *See Sullivan Central Plaza I Ltd. v. BancBoston Real Estate Capital Corp.,* 106 B.R. 931 (N.D.Tex. 1989); *Sullivan Central Plaza I Ltd. v. BancBoston Real Estate Capital Corp.,* 106 B.R. 934 (N.D.Tex.1989).

pealed to this court.[5]

The continued hearing on the Motion to Convert was scheduled for November 3, 1989. In lieu of an evidentiary presentation, Sullivan Central and BancBoston submitted letter briefs to the bankruptcy court regarding the district court's decision. After reviewing these letter briefs and the record, the bankruptcy court ordered the proceeding converted from a Chapter 11 proceeding to a Chapter 7 proceeding. Sullivan Central appealed this decision to the district court. The district court affirmed, and Sullivan Central appealed to this court.

After a panel of this court rendered its decision on the question of § 362 and § 105 relief, *see In re Sullivan Central Plaza, I, Ltd.,* 914 F.2d 731 (5th Cir.1990), Sullivan Central filed a Suggestion for Rehearing En Banc. Treating that motion as a petition for panel rehearing, the panel granted rehearing and consolidated the rehearing with the appeal of the conversion order. *Nos. 89–7001 and 89–7002—Stay and Injunction Orders*

■ In its petition for rehearing, Sullivan Central argues for the first time that Bankruptcy Code § 549[6] grants this court the power to set aside the foreclosure sale. We disagree. Section 549 allows the avoidance of a transfer of property out of the estate only where the transfer "is not authorized ... by the court." Here, the bankruptcy judge lifted the automatic stay and vacated the TRO, knowing that the result would be a transfer of the property (as permitted by state foreclosure law). Under these circumstances we cannot say that the transfer was not authorized by the court. In practical terms, the lifting of the stay and vacation of the TRO constituted

authorization to conduct a foreclosure sale as provided under state law.[7] Accordingly, § 549 provides Sullivan Central no remedy in this case, and we reaffirm our unwillingness to exercise our equitable power so as to fashion one.

### No. 90–1391—Involuntary Conversion

In its new appeal, Sullivan Central appeals the district court's order affirming the bankruptcy court's conversion order, converting this proceeding from a Chapter 11 proceeding to a Chapter 7 proceeding. Sullivan Central presents a number of arguments, none of which we find persuasive.

■ First, Sullivan Central argues that BancBoston lost its standing to prosecute the Motion to Convert. Under Bankruptcy Code section 1112(b), only a party in interest or the United States trustee may file a motion to convert. Section 1109(b) provides a non-exclusive list of "parties in interest," which list includes a "creditor." "Creditor" is defined in section 101(10) as an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor.

Sullivan Central argues that BancBoston lost its status of a creditor due to BancBoston's alleged failure to comply with Bankruptcy Rule 3001(e). Rule 3001(e) requires the transferee of a claim evidenced by a proof of claim to file a notice of the transfer and, if any objection is made, obtain an order approving the transfer before it may be recognized as a creditor. According to Sullivan Central, BancBoston improperly ignored these procedures when it transferred the Tower note between itself and its affiliate, Dallas Central.

---

5. *See In re Sullivan Central Plaza, I, Ltd.,* 914 F.2d 731 (5th Cir.1990).

6. 11 U.S.C. § 549 provides in pertinent part:
(a) [T]he trustee may avoid a transfer of property of the estate—
   (1) that occurs after the commencement of the case; and
   (2) ... (B) that is not authorized under this title or by the court.

   .    .    .    .    .

(d) An action or proceeding under this section may not be commenced after ...

(1) two years after the date of the transfer sought to be avoided....

7. *See In re Tom McCormick Enters.,* 26 B.R. 437, 440–41 (Bankr.M.D.Tenn.1983) (suggesting that "court permission to move against the collateral" would constitute authorization under § 549); *In re Golden Plan of Calif.,* 39 B.R. 551, 555 (Bankr.E.D.Cal.1984) (similar), *vacated and dismissed,* 72 B.R. 205 (Bankr.E.D.Cal.1986).

Both Sullivan Central and BancBoston acknowledge that there were four such transfers of the note and security documents, three before the foreclosure and one following the foreclosure. These transfers were apparently made in connection with bankruptcy proceedings relating to the foreclosure. BancBoston transferred the note to Dallas Central with the expectation that Dallas Central would be the bidder at the foreclosure sale. Following the foreclosure, Dallas Central made the last transfer, assigning the loan documents and the deficiency in connection with the Tower to BancBoston. Therefore, when BancBoston made the motion to convert, BancBoston was actually in possession of the Tower note.

The issue here is whether the transfer of a promissory note is equivalent to the transfer of a proof of claim for purposes of Rule 3001(e). Sullivan Central argues that such a transfer was the equivalent of a transfer of the proof of claim. BancBoston, however, asserts that the transfer of the note did not result in an "unconditional transfer" of a "proof of claim" when that is not what the parties intended.

We agree with the district court that BancBoston had standing to prosecute the motion to convert. At all times BancBoston had a proof of claim on file, and BancBoston was the legal holder of the Tower note when it actually made the motion to convert. In addition, even if BancBoston did violate Rule 3001, Sullivan Central does not cite any authority for its argument that this would deprive BancBoston of standing to appear as a creditor in a bankruptcy case.

■ Second, Sullivan Central argues for the first time on appeal that pending the appeal of the stay and injunction in the Fifth Circuit, the bankruptcy court was divested of jurisdiction to consider whether Sullivan Central's bankruptcy case should be converted to chapter 7. Sullivan Central proposes that this court adopt the broad rule that a bankruptcy court may not consider any request which either directly or indirectly touches upon the issues involved in a pending appeal and may not do any-

thing which has any impact on the order on appeal. *See In re Kendrick Equip. Corp.,* 60 B.R. 356, 358 (Bankr.W.D.Va.1986); *In re Urban Dev. Ltd.,* 42 B.R. 741 (Bankr.M.D.Fla.1984).

We decline to adopt such a broad rule. Sullivan Central's formulation would severely hamper the bankruptcy court's ability to administer its cases in a timely manner. Parties could tie up proceedings for long periods of time while their various appeals wound their way through three levels of appellate review. Here, the matter on which the bankruptcy court ruled—the motion to convert—was not the subject of the pending appeal. Accordingly, the bankruptcy court retained jurisdiction to consider the motion.

■ Third, Sullivan Central argues that the bankruptcy court denied it due process by refusing to hold an additional hearing before entering the conversion order. Here, the bankruptcy judge held an evidentiary hearing on the motion to convert, then continued the motion pending the district court's decision on the appeals of the stay and injunction. Following the district court's decision, Sullivan Central and BancBoston submitted letter briefs to the bankruptcy court regarding the district court's decision. Then, based on the evidence offered at the earlier hearing, but without holding an additional hearing, the bankruptcy judge entered the conversion order. Sullivan Central argues that the failure to hold an additional hearing was improper.

■ This claim is without merit. It is true that the bankruptcy court may issue a conversion order only "after notice and a hearing." 11 U.S.C. § 1112(b). However, "notice and a hearing" is defined as "such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances...." 11 U.S.C. § 102(1)(A). Where a matter has already been adequately argued before the bankruptcy judge, and the judge determines that no further hearings are necessary, then the debtor's due process rights are not violated when the judge decides the issue without further hearings. *In re Bleaufontaine, Inc.,* 634

F.2d 1383, 1387–89 (5th Cir. Unit B 1981). Accordingly, we agree with the district court that the bankruptcy court did not violate Sullivan Central's due process rights.

■ Finally, Sullivan Central argues that cause did not exist under Code section 1112(b) to support the conversion order. A determination of whether or not cause under section 1112(b) exists rests in the sound discretion of the bankruptcy court. *In re Koerner*, 800 F.2d 1358, 1367 & n. 7 (5th Cir.1986). Reasonable cause exists when the moving party shows continuing losses coupled with the absence of a reasonable likelihood of rehabilitation, or the inability to effectuate a plan of reorganization. 11 U.S.C. § 1112(b)(1), (2); *In re Timbers of Inwood Forest Assocs.*, 808 F.2d 363, 371–72 (5th Cir.1987), *aff'd*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988).

Here, we cannot find that the bankruptcy judge abused his discretion when he entered the conversion order. The evidence presented at the hearing indicated that Sullivan Central was not able to effectuate a plan of reorganization. In fourteen months Sullivan Central had not been able to present to the bankruptcy court a confirmable plan of reorganization. In addition, Sullivan Central's principal asset, the Tower, was removed from Sullivan Central's estate through a foreclosure sale. Accordingly, the bankruptcy court acted within its discretion when it entered the conversion order.

*Conclusion*

For the reasons stated above, we AFFIRM the orders of the district court in Nos. 89–7001, 89–7002, and 90–1391.