**In re Roy A. LOTSPEICH, also known as R.A. Lotspeich, Debtor.**

**First State Operating Company, Appellant,**

v.

**L. Win Holbrook, Trustee, Roy A. Lotspeich, Farm Service Agency, and Bank of Laverne, Appellees.**

**BAP No. WO–04–074.
Bankruptcy No. 02–22227–BH.**

United States Bankruptcy Appellate Panel of the Tenth Circuit.

July 25, 2005.

211

Kenneth Jones, Oklahoma City, Oklahoma (Karen L. Howick, Howick & Associates, Oklahoma City, Oklahoma, with him on the brief), for Appellant First State Operating Company.

Mark B. Toffoli, Holbrook & Toffoli, Oklahoma City, Oklahoma, for Appellee L. Win Holbrook.

Gary D. Hammond, Hammond & Associates, P.L.L.C., Edmond, Oklahoma, for Appellee R.A. Lotspeich.

Kay Sewell, Assistant United States Attorney (Robert McCampbell, United States Attorney, with her on the brief), Oklahoma City, Oklahoma, for Appellee Farm Service Agency.

Before McFEELEY, Chief Judge, CLARK, and McNIFF, Bankruptcy Judges.

## OPINION

McFEELEY, Chief Judge.

Appellant First State Operating Company ("FSOC") appeals two orders of the bankruptcy court of the Western District of Oklahoma that approved an asset sale and confirmed the trustee's Chapter 11

plan. First, FSOC argues that the bankruptcy judge erred when he entered an order approving an asset sale. Second, FSOC argues that the Chapter 11 plan violates the absolute priority rule as expressed in 11 U.S.C. § 1129(b)(2)(B)(ii).[1] Appellees respond that the appeal of the sale order is moot under 11 U.S.C. § 363(m) and that the Chapter 11 plan was appropriately confirmed under either § 1129(a) or, alternatively, under § 1129(b)(1). In the absence of any findings about whether the purchaser of the property sold in the asset sale was a good faith purchaser, we conclude that we cannot determine whether the statutory mootness provision found in 11 U.S.C. § 363(m) applies. With respect to the confirmation order, we conclude that the bankruptcy court erred when it confirmed the Chapter 11 plan because the plan does not meet the provisions of 11 U.S.C. § 1129(b)(2)(B)(ii). We REVERSE and REMAND for proceedings consistent with this opinion.

## I. Background

Debtor/Appellee Roy A. Lotspeich ("Debtor") filed a proceeding under Chapter 11 of the Bankruptcy Code on December 5, 2002. Appellee L. Win Holbrook was appointed Trustee of the case ("Trustee"). The following is a list of certain relevant claims against the Debtor's estate.

Appellee Farm Service Agency ("FSA") filed a claim in the amount of approximately $926,205.65 secured by 840 acres of real property situated in Harper County, Oklahoma, and 1933 acres of real property located in Lipscomb County, Texas (hereinafter referred to collectively as "Harper Property").

FSOC filed a claim of approximately $822,000.00 based on a state court judgment entered on April 26, 2002. The state court judgment was filed in both Harper County, Oklahoma, and Lipscomb County, Texas, against all real property owned by the Debtor in those counties.[2] After the Debtor filed under Chapter 11 of the Bankruptcy Code, the Oklahoma Court of Civil Appeals reversed and remanded the state court judgment on April 4, 2003. On November 12, 2003, the Debtor filed an Objection to Proof of Claim of First State Operating Company and Notice of Hearing ("Claim Objection"). The Claim Objection objected to FSOC's claim on the grounds that the state court judgment had been reversed and further argued that by maintaining the statements of judgment FSOC

---

**1.** All future statutory references are to Title 11 of the United States Code unless otherwise noted.

**2.** FSOC asserts that its claim is secured based on the state court judgment. Alternatively, on October 22, 2003, FSOC filed an Amended Proof of Claim asserting a secured claim based on a Farm Products Security Agreement ("Agreement") granting FSOC a security interest "in all presently owned or future acquired farm products and all present owned or future acquired agricultural products." According to FSOC, the Agreement was filed on a form UCC–1 in the state of New Mexico and in Oklahoma county on December 31, 1997, and in Harper County on December 29, 1997. Appendix of Appellee L.

Win Holbrook, Motion for Determination and Valuation of Secured Claim at 2, ¶ 4. The Trustee objected to FSOC's claim of secured status on the grounds that the Uniform Commercial Code as adopted in Oklahoma provides that financing statements are effective for only five years unless a continuation statement is filed. Because the Trustee was unable to find a continuation statement filed by FSOC, the Trustee argues that FSOC no longer possesses a security interest in the alleged collateral. Appendix of Appellee L. Win Holbrook, Trustee's Objection to Motion for Determination and Valuation of Secured Claim at 3, ¶ 8. The bankruptcy court has not ruled on this issue.

was violating the automatic stay.[3] There have been no proceedings to determine the status of FSOC's claim.[4]

The Bank of Laverne ("Laverne") filed a claim of $658,705.00 that is comprised of two obligations. The first obligation is an interest-bearing note in the amount of $120,000.00 and the second is several non-interest bearing notes in an amount in excess of $138,600.00. Laverne is secured by mineral interests ("mineral interests") and some real property also located in Harper County ("surface property"). Under the plan, the value of the mineral interests held as security is $143,000.00.[5] The value of the surface property held as security is $115,600.00.

Personal property listed in the Debtor's schedules included a one-half interest in the R.A. Lotspeich Revocable Living Trust ("RA Trust") and a one-half interest in the

trust of his wife, the Rosalee Lotspeich Revocable Living Trust ("Rosalee Trust"). The Debtor's wife is not in bankruptcy. The two Trusts were established in 2000. Debtor and wife are trustees of their respective Trusts and each is the beneficiary of the other's Trust. In September 2000, the Debtor transferred 50% of his interest in the following entities to the RA Trust and 50% to the Rosalee Trust: Lotspeich Grain and Cattle Company, Lotspeich Group L.P., Sowboys, and Arrow Cattle Company. Debtor and wife each owned 50% of the Lotspeich Grain & Cattle Company, Sowboys, and Arrow Cattle Company. Each had a 47% limited partnership interest in Lotspeich Group L.P.

In August 2001, the Debtor transferred into the Trusts (50% into the RA Trust and 50% into the Rosalee Trust) one-half of his interest in the surface property and 100% of his interest in oil and gas property

3. The Claim Objection sets a hearing date for December 16, 2003. See Appendix of Appellee L. Win Holbrook, Objection to Proof of Claim by First State Operating Company and Notice of Hearing at 4, ¶ 5. For reasons not explained in the record, on that date, the Court granted FSOC's motion to appoint a trustee, but did not determine the value of FSOC's claim. Appendix of Appellee L. Win Holbrook, Motion for Determination and Valuation of Secured Claim at 2, ¶ 5.

4. FSOC filed a Motion for Determination and Valuation of Secured Claim on June 25, 2004. The bankruptcy court denied that motion on the basis that it wasn't the proper procedure, telling FSOC at a hearing on August 4, 2004, that FSOC needed to bring a proceeding under Federal Rule of Bankruptcy Procedure 7001 ("7001 proceeding") to determine the secured status of its claim. See Appendix of Appellee L. Win Holbrook, Reporter's Transcript of Proceedings at 31, and August 5, 2004, Order (i) Approving Trustee's Disclosure Statement and Fixing Time for Filing Acceptances or Rejections of Plan, Combined with Notice Thereof; (ii) Denying Motion to Convert; (iii) Denying Motion to Prohibit Debtor from Using Cash Collateral; and (iv) Denying Motion for Determination and Valua-

tion of Secured Claim, at 1. FSOC has never brought a 7001 proceeding.

5. The Tillman Howell Appraisal Services arrived at this valuation of the mineral interest and it is the figure used in the plan. Appellant's Appendix, Report of Todd Lisle, Court-Appointed Examiner, November 3, 2003, at 225. FSOC disputes this valuation, claiming that the mineral interests as appraised by Terra Nova Land Associates indicates that the mineral interests are worth in excess of $500,000.00. Id. At the confirmation hearing, Gary Pierce testified for FSOC as to the valuation of the mineral interests. It appears that Gary Pierce works for Terra Nova although his relationship to that entity is never clarified on the record. According to Mr. Pierce's testimony, he originally calculated the mineral interests as being worth $568,608.00. Subsequently, Mr. Pierce performed another calculation based on lower market values, concluding that the mineral interests had a current value of $546,526.35. Appellant's Appendix, Reporter's Transcript of Proceedings at 178–80. The bankruptcy court made no findings either at or following the confirmation hearing as to valuation of these mineral interests.

pledged to Laverne. The Trustee did not initiate any avoidance proceedings with respect to the Trusts. At trial, there was testimony that none of these ownership interests in the business entities held by the Trusts has any value.

The Trustee filed a disclosure statement on June 21, 2004. On August 5, 2004, following a hearing conducted on the previous day, the bankruptcy court approved the disclosure statement. Subsequently, the Trustee filed an Approved Disclosure Statement ("Disclosure Statement"). The Disclosure Statement revealed that the Debtor valued the Harper Property at $1,000,000.00 while FSA valued the property at $825,000.00. *See* Appellant's Appendix, Approved Trustee's Disclosure Statement at 17. The Disclosure Statement provided that the Trustee would abandon the Harper Property to the Debtor and the Debtor would sell the property to a third party, Wolf Creek Enterprises, Inc. ("Wolf Creek"), for the amount of $808,761.61. *Id.* Of that amount, the purchaser was to pay $738,761.61. The Disclosure Statement further provided that the "Debtor shall contribute $70,000.00 toward the purchase of the Farm Services Agency collateral." Appellant's Appendix, Trustee's Plan of Reorganization at 39. Accordingly, the Trustee filed a Motion to Sell [the Harper] Property of the Estate Free and Clear of Liens and Other Interests ("Motion to Sell").

On August 5, 2005, the Trustee filed the Trustee's Plan of Reorganization ("Plan"). The following language in pertinent part is on the cover page of the Plan:

The Trustee's proposed plan of reorganization provides that the Debtor shall retain his rights in all property of the reorganized estate and does not provide for full payment of unsecured claims. The Plan does not meet the absolute priority test set forth in 11 U.S.C. § 1129(b) which requires that creditors be paid in full before the owner(s) retain or receive anything. Accordingly, an objection to the plan could be filed by you. If you fail to object to the plan or if you vote in favor of the plan you will be deemed to have waived your right to require compliance with § 1129(b).

Appellant's Appendix, Trustee's Plan of Reorganization at 31. The Trustee requested confirmation of the Plan or alternatively, that the Plan be crammed down pursuant to § 1129(b)(1).

The Plan included seven classes.

Class 1 included administrative claims.

Class 2 consisted of the allowed secured claim of Laverne. The Plan provided that Class 2 would be paid the value of its secured claim in the amount of $258,600.

Class 3 consisted of the allowed secured claim of FSA. Under the Plan, the Debtor valued the Harper Property in the amount of $712,000.00 while FSA valued the Harper Property at $843,600.00. Wolf Creek was to purchase the Harper Property for $738,761.61. In addition, Lotspeich Group Inc. was to contribute $70,000.00 to the Debtor and the Debtor would use it to pay FSA.[6]

Class 4 consisted of the allowed secured claim of Rural Housing Services in the amount of $10,088.49 at 1% interest. This claim was to be paid over a term of ten years.

Class 5 consisted of the allowed unsecured priority claim of the Oklahoma Tax Commission in the amount of $616.04.

---

**6.** At the time of the hearing, there was no written contract of sale between Wolf Creek and the Debtor's estate. *See* Appellant's Appendix, Reporter's Transcript of Proceedings at 104.

This claim was to be paid in full within sixty days of the effective date of the Plan.

Class 6 consisted of all allowed unsecured non-priority claims. This class includes four allowed claims: a claim held by a Mr. William C. Henley; the unsecured portion of the claim held by Laverne; the unsecured portion of the claim held by FSA; and the unsecured portion of the claim held by the Oklahoma Tax Commission.

Class 7 consisted of the disputed, contingent and unliquidated unsecured claim of FSOC.

On September 8, 2004, FSOC objected to confirmation on the Trustee's Chapter 11 Plan on the following grounds: (1) it violated § 1122(a) and § 1123(a)(1) because FSOC's claim was not properly classified; (2) it violated § 1123(a)(1) and (3) because it failed to recognize the secured portion of FSOC's claim; (3) it failed to include appropriate distribution on FSOC's claim in the event that FSOC's litigation was successful; (4) it violated the absolute priority rule; (5) it was not in the best interests of the creditors; (6) it was not filed in good faith; (7) FSOC would receive more in a Chapter 7 liquidation; and (8) it was not fair and equitable.

On September 17, 2004, FSOC objected to the Motion to Sell on the following grounds: (1) the sale was not in the best interests of the creditors and a reasonable price was not being obtained; (2) the sale should not occur until Plan confirmation because the sale was being used to circumvent the absolute priority rule; and (3) the sale was an improper attempt to cram down the Plan.

On September 22, 2004, the bankruptcy court heard the Motion to Sell and Confirmation of the Trustee's Plan. At the hearing, the Trustee's attorney notified the court of how the Trustee had tallied the votes on the Plan: Class 1 voted for the Plan; Class 2 and Class 3 voted for the Plan; Class 4 and Class 5 did not vote for the Plan but were deemed to have accepted it; Class 6 did not vote for the Plan but was deemed to have accepted it; Class 7 rejected the Plan. The bankruptcy court made the following findings on the record:

...the testimony indicates, without any question, that all assets of the estate are pledged to the government or to banks or somebody for more than their value. It's more than—the estate is more than under water. It's completely submerged; it's drowned. There just is no equity in this estate to deal with for the benefit of any unsecured creditors.

I have serious questions if this First State Operating Company is a party in interest as required by Section 1128(b). Its claim is disputed, and it's based on a lawsuit that's been tried and appealed, reversed, and now sent back for another trial. To go on with that would take no telling how many years . . . .

The trustee has used his discretion not to seek to abandon these assets, but that would obviously be the only alternative to the plan. They're simply of no value to the estate. . . . The estate simply just has no assets that are not pledged to someone.

. . . .

In the testimony, I find that the plan complies with all provisions of Title 11. [The trustee] . . . has proposed the plan in good faith and certainly not by any forbidden means.

. . . .

It's more than plain to me that if the case were one under Chapter 11—Chapter 7, excuse me, there would be no—no recovery at all for the unsecured creditors. And even the secured contractors, as is the case under the plan, still do not

receive a full amount of their secured debt.

Coming back to Section 8, the other sections of 1129 are all met. Now let's look at 1129(b).

I find that the plan does not discriminate unfairly, in that, as I said, there's—there's nothing to—under a Chapter 7 liquidation, there would be nothing for the estate or the unsecured creditors, and it's fair and equitable, in that the debtor has not concealed or obtained any property of the estate. He may have made arrangements with somebody—with the potential buyer of the property to on down the line lease some of the property or have some type of arrangement with the buyer, but that's not property of the estate. That's something that would occur after this case is finished.

So, all in all, I find that it's in the best interest of the creditors that the plan be confirmed . . . .

Appellant's Appendix, Reporter's Transcript of Proceedings, at 190–193. Without making any findings with respect to the ballot, the bankruptcy court orally confirmed the Plan and granted the Motion to Sell.

The Order Granting Motion to Sell ("Sale Order") granted the Motion to Sell and overruled FSOC's objection for the reasons stated orally on the record. The Sale Order did not provide for distribution of the proceeds of the Sale.

The Order Confirming Plan ("Confirmation Order") was entered on September 28, 2004. It stated that the Plan was confirmed and had met the requirements under § 1129(b) for the reasons stated on the record. It did not address whether any or all of the requirements of § 1129(a) were met.

On October 7, 2004, FSOC filed its Notice of Appeal of the Confirmation Order and the Sale Order and filed a Motion to Stay Proceeding and/or For Supersedeas Bond and Brief In Support ("Motion to Stay"), requesting that the bankruptcy court stay the Confirmation Order and the Sale Order. After a hearing on October 26, 2004, the bankruptcy court denied the Motion to Stay.

At the oral argument in this appeal, the parties stated that the sale had been completed.

## II. Discussion

As a preliminary matter, we must consider our jurisdiction over this appeal. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986). This appeal involves two orders: the Sale Order and the Confirmation Order. Because both of these orders are final orders, procedurally we have jurisdiction under 28 U.S.C. § 158(a)(1). *See also Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). FSOC timely filed its notice of appeal pursuant to Federal Rule of Bankruptcy Procedure 8002. All parties have consented to this Court's jurisdiction by failing to elect to have the appeal heard by the United States District Court for the Western District of Oklahoma. 28 U.S.C. § 158(c)(1); Fed. R. Bankr.P. 8001. While the Appellees do not dispute our jurisdiction with respect to the Confirmation Order, they contend that any appeal of the Sale Order is moot because all transactions with respect to its provisions have occurred.

██ Under the United States Constitution, federal courts may hear only "cases" or "controversies." U.S. Const., art. III, § 2, cl. 1. If there is no live case or controversy, an appeal is moot. *Out of Line Sports, Inc. v. Rollerblade, Inc.*, 213

F.3d 500, 501 (10th Cir.2000). A controversy is no longer "live" if the reviewing court cannot give "'any effectual relief whatever.'" *Church of Scientology v. United States,* 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992) (quoting *Mills v. Green,* 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed. 293 (1895)). A party must seek only that relief that is "'capable of addressing the alleged harm.'" *Nat'l Advertising Co. v. City and County of Denver,* 912 F.2d 405, 411 (10th Cir.1990) (quoting *Blinder, Robinson & Co. v. United States Sec. & Exch. Comm'n,* 748 F.2d 1415, 1418 (10th Cir.1984)). We review the issue of mootness *de novo. Boullioun Aircraft Holding Co. v. Smith Mgmt. (In re Western Pacific Airlines),* 181 F.3d 1191, 1194 (10th Cir.1999).

With respect to the Sale Order, FSOC makes two arguments and asks for two different remedies. First, FSOC asks that we require FSA to return a portion of the sales proceeds to the estate. FSOC grounds this argument on its contention that the $70,000.00[7] paid to FSA from a third party was in reality payment on an unsecured portion of FSA's claim and was drawn from funds that should have been recognized as property of the estate. When FSA received the $70,000.00 as part of the sale proceeds, FSOC contends that it was a preferential distribution. Alternatively, FSOC argues that the bankruptcy court erred in approving the sale because

the sale was not negotiated at arm's length and the purchaser was not a good faith purchaser. Pursuant to this argument, FSOC asks that we invalidate the sale. In opposition, the Appellees argue that under § 363(m) no effectual relief can be granted with respect to the Sale Order and so the appeal is moot. We will address each argument in turn.

FSOC's argument that $70,000.00 of the proceeds from the sale were wrongly paid to FSA and its corresponding request that these proceeds be returned to the estate are irrelevant in an appeal of the Sale Order. By its terms, the Sale Order does not make any provision for distribution of the proceeds. The Sale Order overrules FSOC's objection[8] and provides authorization for the sale to occur free and clear of all liens. *See* Appellant's Appendix, Order Granting Motion to Sell at 82. The proceeds of the sale at issue were distributed under the confirmed Plan. For this reason, we decline to address any argument concerning the proper distribution of the sale proceeds in FSOC's appeal of the Sale Order.

FSOC's second argument with respect to the Sale Order goes to the validity of the sale. The use, sale or lease of property of the estate is governed by the terms of § 363. Under § 363(m), a purchaser of property of the estate is protected from the effects of reversal or modi-

---

7. There is a discrepancy between the record and FSOC's brief on the amount of the sum remitted to FSA that is in dispute. According to the record, only $50,000.00 of the $70,000.00 contributed by the third party was actually paid to FSA. The remaining $20,000.00 was retained by the Debtor's estate for payment of administrative costs. See Appendix of Appellee L. Win Holbrook, Trustee's Response to Motion to Stay Proceeding and/or for Supersedeas Bond at 5, ¶ 14. However, for the sake of clarity, we will refer to the total sum of money contributed by the

third party without regard to its actual distribution.

8. While we recognize that FSOC grounded part of its objection to the Motion to Sell on its contention that the proceeds were improperly distributed, the Sale Order makes no provision for the sale proceeds. Because the sale proceeds were distributed pursuant to the Confirmation Order and we are reversing the Confirmation Order, it is appropriate for the bankruptcy court to revisit this issue following our remand.

fication on appeal of an order authorizing such a sale under § 363(b) or (c), if the buyer was a good faith purchaser and a stay pending the appeal was not obtained. In effect, if both prongs of § 363(m) are met, the section moots an appeal because the court cannot grant any remedy that will revoke the sale. *Osborn v. Durant Bank & Trust Co. (In re Osborn)*, 24 F.3d 1199, 1203–1204 (10th Cir.1994); *Crowder v. Given (In re Crowder)*, 314 B.R. 445, 449 (10th Cir. BAP 2004); *see, also, L.R.S.C. Co. v. Rickel Home Centers, Inc. (In re Rickel Home Centers, Inc.)*, 209 F.3d 291, 298 (3d Cir.2000) (referring to § 363(m) as a " 'statutory mootness' provision").[9]

Here, FSOC did not obtain a stay pending appeal. Although FSOC does not directly address the provisions of § 363(m) when it argues that the Sale Order should be reversed on the grounds that the purchaser was not a good faith purchaser, its argument implicates the terms of § 363(m).[10]

■■■ "Good faith purchaser" is not defined in the Bankruptcy Code. When evaluating this term under the predecessor of § 363(m), Federal Rule of Bankruptcy Procedure 8005, the Tenth Circuit Court of Appeals turned to the traditional equitable definition of "good faith purchaser." *See*

*Tompkins v. Frey (In re Bel Air Assocs., Ltd.)*, 706 F.2d 301, 305 (10th Cir.1983). The Tenth Circuit held that good faith was established with respect to a purchaser when both of the following criteria were met: (1) the purchaser bought without "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders"; and (2) the purchaser paid value, which is defined as at least 75% of the appraised value of the assets. *Bel Air*, 706 F.2d at 305 & nn. 11–12; *Crowder*, 314 B.R. at 450.

■■■ A bankruptcy court's determination of good faith under § 363(m) is reviewed under the clearly erroneous standard. *Bel Air*, 706 F.2d at 305. When a bankruptcy court makes no factual findings on the issue of whether a sale was conducted in good faith, it is appropriate to remand to the bankruptcy court for the limited purpose of making findings on this issue. *In re Abbotts Dairies of Pa. Inc.*, 788 F.2d 143 (3d Cir.1986); *Thomas v. Namba (In re Thomas)*, 287 B.R. 782 (9th Cir. BAP 2002).[11]

Neither party disputes that the sale was made for value. According to FSOC, the purchaser was not a good faith purchaser because the parties did not negotiate the sale at arm's length and there were addi-

---

**9.** Section 363(m) does not moot an appeal where state law or the Bankruptcy Code provide remedies that do not negate the validity of a sale. *Osborn*, 24 F.3d at 1204.

**10.** We observe that the issue of good faith was directly raised below in FSOC's Objection to Trustee's Motion to Sell and Supporting Brief. *See* Appellant's Appendix at 73.

**11.** There is a difference of opinion between courts in the Third Circuit and the Ninth Circuit as to whether it is incumbent on a bankruptcy court to evaluate a purchaser's good faith and make corresponding findings when evaluating a motion to sell under

§ 363(b) or (c). In *Abbotts*, the Third Circuit held that all bankruptcy courts must make an explicit finding of good faith when evaluating a motion to sell under § 363(b) or (c). *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143 (3d Cir.1986)(concluding further that in the absence of findings of good faith, the case must be remanded for such findings). In contrast, in *Thomas*, the Ninth Circuit BAP concluded that because § 363(b) and (c) do not require findings of good faith in evaluating a motion to sell, such findings need not be made prior to the time § 363(m) is implicated. *In re Thomas*, 287 B.R. 782 (9th Cir. BAP 2002). Because of our disposition of this matter, we need not decide that issue here.

tional contractual terms to the sale that were not revealed to the court or other interested parties. The bankruptcy court made no findings with respect to this issue. Because there are no findings as to whether the purchaser was a good faith purchaser and we cannot ascertain whether § 363(m) applies, we must remand the Sale Order for findings on that limited issue.

In its appeal of the Confirmation Order, FSOC argues that the Plan was erroneously confirmed under § 1129 because subsections of § 1129(a) were not met, and the Plan violates the absolute priority rule as expressed in § 1129(b)(2)(B)(ii). In opposition, Appellees argue that all classes accepted the Plan under § 1129(a) and thus, the absolute priority rule is irrelevant. Alternatively, Appellees argue that the requirements of § 1129(b)(2)(B)(ii) are met.

The first issue is whether all classes accepted the Plan under § 1129(a). The Appellees argue that all impaired classes accepted or were deemed to have accepted the Plan. The bankruptcy court made no findings with respect to this issue but proceeded to evaluate the Plan under the provisions of § 1129(b). Because the bankruptcy court did not make any findings with regard to § 1129(a), we will not address the Appellees' argument on that

provision here.[12] However, because subsection (b) is not relevant unless all provisions except § 1129(a)(8) are met, the bankruptcy court must have necessarily decided that there was at least one impaired accepting class under § 1129(a)(10) and provisionally there was one rejecting class under § 1129(a)(8).[13]

Section 1129(b)(1) only applies if all provisions except § 1129(a)(8) are met.[14] Under § 1129(b)(1) on request of a party proponent, a court can confirm a plan in the absence of the acceptance of all impaired classes if at least one class of impaired creditors has affirmatively accepted the plan, the plan does not discriminate unfairly, and the plan is fair and equitable "with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b)(1). This provision is often referred to as the cram down provision of the Bankruptcy Code. *See Ruti–Sweetwater*, 836 F.2d at 1265. It is so termed because if its provisions are met, a plan can be confirmed or "crammed down" over the objections of impaired classes. *Id.* at 1267.

The Appellees argue that this Plan was properly confirmed under § 1129(b)(1). In opposition, FSOC argues that the Plan should not have been con-

---

**12.** FSOC argues that the Plan does not comply with § 1129(a)(1), (a)(3), or (a)(7). Because we determine, *infra*, that the Plan does not meet the provisions of the absolute priority rule, we need not address these additional arguments here.

**13.** Section 1129(a) provides that a bankruptcy court shall confirm a plan only if all subsections of § 1129(a) are met. Three subsections of § 1129(a) address acceptance of a plan. Section 1129(a)(7)(i)-(ii) provides that each impaired class must either have accepted the plan or will receive or retain under the plan as much as they would receive or retain if the debtor were liquidated under Chapter 7. Under § 1129(a)(10) there must be actual accep-

tance by at least one impaired class before a plan may be confirmed. *See also Heins v. Ruti–Sweetwater, Inc. (In re Ruti–Sweetwater)*, 836 F.2d 1263 (10th Cir.1988). Finally, under § 1129(a)(8) each class must have accepted the plan or must not be impaired under the plan.

**14.** *See Ruti–Sweetwater*, 836 F.2d at 1267 (observing "under the present Bankruptcy Act, a plan is not only 'presumed' confirmable, but is confirmable under § 1129(a) or 1129(b) where only one class of impaired claims has accepted the plan and the other elements of § 1129(a) or § 1129(b) are met.").

firmed because the Plan was not fair and equitable with respect to all impaired classes.[15] Under § 1129(b)(2)(B), a plan will be fair and equitable with respect to unsecured claims [16] if the Plan meets one of the following provisions: (1) the unsecured claim will be paid in full; or (2) "the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property." 11 U.S.C. § 1129(b)(2)(B)(i), (ii). The second provision is often referred to as the "absolute priority rule."

█ In this case, subsection (1) is not met because the Plan provides that Class 7, consisting of FSOC's impaired, unsecured claims, will receive nothing. Therefore, before the Plan could have been crammed down under § 1129(b)(1), the Debtor must have shown that the absolute priority rule as expressed in § 1129(b)(2)(B)(ii) had been met with respect to any non-accepting unsecured impaired classes. FSOC argues that the Plan violates the absolute priority rule because the Debtor will retain an interest in both real property and certain mineral interests on which he will be making payments throughout the life of the Plan and then hold free and clear of all liens thereafter. Although the bankruptcy court never explicitly stated why it found that the Plan complied with the absolute priority rule, it implied that the Plan does not violate the absolute priority rule because the debtor had no equity in either the surface property or the mineral interests but held only an equitable ownership interest. The Appellees urge this Court to accept this position. That we cannot do. The Appellees' argument is directly contradicted by Tenth Circuit case law.

In *Unruh v. Rushville State Bank*, 987 F.2d 1506 (10th Cir.1993), the Tenth Circuit determined what interests constitute "an interest in property" as used in § 1129(b)(2)(B)(ii). In *Unruh*, the debtors [17] operated farms as sole proprietorships. *Unruh*, 987 F.2d at 1507. Their Chapter 11 plans permitted them to retain their property and assets subject to secured claims until completion of their plans and thereafter free of such claims or interests. *Id.* Under their plans the debtors were permitted to continue to manage their respective farms. *Id.* When their Chapter 11 plans were objected to by the unsecured creditors, the debtors attempted to have the plans crammed down. *Id.* The bankruptcy court held that the plans could not be crammed down because the debtors were retaining an interest in property based on the debtors' equitable ownership interests in their businesses. *Id.* The debtors appealed, arguing that as sole

---

**15.** FSOC also argues that the Plan unfairly discriminates against FSOC because it improperly classifies FSOC, it strips FSOC of its secured lien, and it provides for a discriminatory distribution. This argument is based on the premise that FSOC has a secured claim. The Plan treats FSOC's claim as unsecured and disputed and there have been no proceedings to determine the status of the claim. The bankruptcy court made no specific findings regarding FSOC's arguments concerning the "unfairly discriminates" prong. We observe that both prongs of § 1129(b) must be met before a plan may be crammed down: specifically, a plan may not unfairly discriminate and must be fair and equitable with regard to all non-accepting impaired classes. See 11 U.S.C. § 1129(b)(1)(B). Because we find that the Plan is not fair and equitable, it is unnecessary that we address whether the Plan unfairly discriminates.

**16.** Because FSOC's claim is treated in the Plan as unsecured, we will address § 1129(b)'s requirements with respect to unsecured claims.

**17.** *Unruh* resolved two consolidated cases; there were two debtors and two plans at issue.

proprietors they did not have an interest on account of which they would receive or retain property. Both the district court and the Tenth Circuit Court of Appeals disagreed.

 The Tenth Circuit held that the debtors had an equitable ownership interest in property because they were remaining in possession and control of their property and had a right to the future profits of their farms regardless of their insolvency at the time of the petition. *Id.* at 1508–09. " 'Whether the value is present or prospective, for dividends or only for purposes of control' a retained equity interest is a property interest to 'which the creditors [are] entitled ... before the stockholders [can] retain it for any purpose whatever.' " *Id.* at 1509 (quoting *Norwest Bank Worthington v. Ahlers (In re Ahlers),* 485 U.S. 197, 208, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988), *citation omitted*). In sum, the Tenth Circuit determined that as a matter of law, an equitable ownership interest is an interest in property as described in § 1129(b)(2)(B)(ii).

Here, the Plan provides that the Debtor will continue to make payments on certain real estate and minerals secured by Laverne and that following the conclusion of the Plan, the Debtor will hold these properties free and clear of any liens. The Debtor's equitable ownership interests in these properties is a property interest under § 1129(b)(2)(B)(ii). It is undisputed that the Debtor holds a claim junior to that of Class 6.[18] Consequently, the Debtor's retention of these interests constitutes a violation of the absolute priority rule expressed in § 1129(b)(2)(B)(ii). Because the Plan violates the absolute priority rule, the Plan cannot be confirmed under the provisions of § 1129(b) and the bankruptcy court erred when it so found.

Because the Plan cannot be confirmed under the provisions of § 1129(a) or crammed down under § 1129(b), we conclude that the bankruptcy court erred when it confirmed the Plan.

### III.  Conclusion

We REVERSE and REMAND with respect to the Sale Order for the limited purpose of determining whether the purchaser of the Harper Property was a good faith purchaser within the provisions of § 363(m) as defined herein. With respect to the Confirmation Order we REVERSE and REMAND for proceedings consistent with this opinion.

---

**18.**  *See* 11 U.S.C. § 507 (determining the priority of claims).